FILED

09/27/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0613

DA 15-0613

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 240

---

CARBON COUNTY RESOURCE COUNCIL,
a Montana Non-profit public benefit corporation,
and NORTHERN PLAINS RESOURCE COUNCIL,
Montana Non-profit, public benefit corporation,

      Plaintiffs and Appellants,

  v.

MONTANA BOARD OF OIL AND GAS CONSERVATION,

      Defendant and Appellee.

---

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 14-0027
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Jack R. Tuholske, Tuholske Law Office, P.C., Missoula, Montana

          Amanda R. Knuteson, Knuteson Law Office PLLC, Bozeman, Montana

      For Appellee:

          Robert Stutz, James M. Scheier, Assistant Attorneys General, Helena, Montana

      For Amicus Curiae Montana Petroleum Association:

          Colby L. Branch, Jeffery J. Oven, Shalise C. Zobell, Crowley Fleck PLLP, Billings, Montana

---

Submitted on Briefs:  June 15, 2016

Decided:  September 27, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Carbon County Resource Council and Northern Plains Resource Council (collectively Resource Councils) oppose hydraulic fracturing at the Hunt Creek 1-H well, an exploratory gas well in Carbon County, Montana. Resource Councils challenged the Montana Board of Oil and Gas Conservation's (the Board) approval of well stimulation activities at the site, claiming that they were denied a meaningful opportunity to participate in the process. The Thirteenth Judicial District Court held that Resource Councils' concerns were speculative and therefore not ripe for judgment. We disagree and hold that Resource Councils' claims are ripe for judicial review. We conclude that the Board did not violate their right to participate in its consideration of the permit issued in this case. We thus find it unnecessary to decide whether the Board's "48-hour notice" rule may be unconstitutional in other circumstances.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 The Montana Constitution guarantees citizens a "reasonable opportunity" to participate in government operations. Mont. Const. art. II, § 8. In executing this constitutional mandate, agencies are obligated to "develop procedures for permitting and encouraging the public to participate in agency decisions that are of significant interest to the public." Section 2-3-103, MCA. As a quasi-judicial state agency administratively attached to the Department of Natural Resources and Conservation, the Board is required to ensure public participation in its decision-making procedural processes. Sections 2-3-103, 2-4-201, 2-15-3303, MCA.

3

¶3      The Board's procedural rules require oil and gas well operators to file an application for a permit to drill with the Board. Admin. R. M. 36.22.601(1). If the proposed well is outside of an existing oil and gas field delineated by the Board, the operator must publish notice of its intent to drill and file proof of publication with the Board. Admin. R. M. 36.22.601(1). The application for a permit to drill must be set for notice and public hearing if an interested person demands an opportunity to be heard pursuant to the procedures provided for under the relevant Administrative Rules. Admin. R. M. 36.22.601(4). Following a hearing, the Board may either grant or deny the permit. Admin. R. M. 36.22.601(5). If the Board grants the permit, it may impose "such conditions" as it finds "proper and necessary." Admin. R. M. 36.22.601(5)(a).

¶4      Well completion activities such as "hydraulic fracturing, acidizing, or other chemical stimulation . . . are considered permitted activities under the drilling permit for that well only if the processes, anticipated volumes, and types of materials planned for use are expressly described in the permit application for that well." Admin. R. M. 36.22.608(1).[1] Admin. R. M. 36.22.608(2) (the Rule) provides that for exploratory wells—like the well at issue here—the well operator must notify the Board of its "intent to stimulate or chemically treat a well . . . prior to commencing such activities." The well operator must describe the "fracturing, acidizing, or other chemical treatment" in the

---

[1] "Hydraulic fracturing" or "fracturing," also known as "fracking," "fracing," or "hydro-fracking," is an oil and gas extraction technique. The Administrative Rules of Montana define "fracturing" as "the introduction of fluid that may or may not carry in suspension a propping agent under pressure into a formation containing oil or gas for the purpose of creating cracks in said formation to serve as channels for fluids to move to or from the well bore." Admin. R. M. 36.22.302(28).

notice, and the operator must give the Board notice "at least 48 hours before commencement of well stimulation activities." Admin. R. M. 36.22.608(2)(a). A well operator is required to disclose the amount and type of materials used in its well stimulation activities, Admin. R. M. 36.22.1015, and comply with safety and well control requirements if it engages in hydraulic fracturing, Admin. R. M. 36.22.1106.

¶5 In October 2013, Energy Corporation of America (Energy Corp.) announced that it planned to develop oil and gas leases in the Beartooth Mountains. Energy Corp. then filed an application with the Board for a permit to drill an exploratory oil and gas well in Carbon County known as the Hunt Creek 1-H well (Hunt Creek Well). Energy Corp.'s application did not describe any well completion activities pursuant to Admin. R. M. 36.22.608(1). Resource Councils, which are affiliated grassroots conservation and agriculture groups, objected to the permit. Despite procedural problems with Resource Councils' objection, the Board held a hearing on Energy Corp.'s drilling permit application in February 2014. Nine local residents and an expert testified on behalf of Resource Councils. The residents presented their concerns with the permit application, the environmental assessment's adequacy, and the potential environmental impacts of hydraulic fracturing at the Hunt Creek Well. The expert, an environmental geologist, testified and submitted a report highlighting the risks associated with the proposed drilling plan as well as risks associated with hydraulic fracturing at the site.

¶6 During the hearing, the Board noted that Energy Corp. proposed drilling an exploratory well to evaluate the site's potential for development. The Board emphasized

5

that Energy Corp.'s application did not propose hydraulic fracturing and that there was no indication from the application that hydraulic fracturing was planned in the future. At the close of the hearing, the Board approved the permit with the condition that Energy Corp. comply with certain water standards should it propose hydraulic fracturing at the Hunt Creek Well in the future. The Board's order approving the permit reiterated that Energy Corp. did not propose hydraulic fracturing at the Hunt Creek Well.

¶7 On July 7, 2014, Energy Corp. submitted a sundry notice to the Board pursuant to the Rule. In its notice, Energy Corp. indicated that it intended to "stimulate" or "chemically treat" the Hunt Creek Well and "perform a diagnostic fracture injection test" (diagnostic test) on the well. The notice provided a detailed description of the planned work and stated that the well would be shut in once "25-30 barrels [had] been pumped into the formation." Pursuant to the Rule, the Board approved Energy Corp.'s notice and allowed it to perform the diagnostic test without engaging in any additional review or public process.

¶8 After the hearing, but prior to Energy Corp.'s submitting notice pursuant to the Rule, Resource Councils challenged the Board's permitting process for the Hunt Creek Well. Resource Councils claimed, in part, that the Board's application of the Rule violated their constitutional right to meaningfully participate in government decisions. On the parties' cross-motions for summary judgment, the District Court held that because

6

hydraulic fracturing had not occurred at the Hunt Creek Well, Resource Councils' constitutional challenge was not ripe for judgment.[2]  Resource Councils appeal.

## STANDARDS OF REVIEW

¶9      We review summary judgment rulings de novo.  *Reichert v. State*, 2012 MT 111, ¶ 18, 365 Mont. 92, 278 P.3d 455.  Issues of justiciability—such as standing, mootness, ripeness, and political question—are questions of law that we also review de novo. *Reichert*, ¶ 20.  Our review of constitutional questions is plenary.  *Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88.

## DISCUSSION

¶10    *1.   Whether the District Court erred in concluding that Resource Councils' challenge was not ripe.*

¶11     Relying on *Reichert*, the District Court first concluded that Resource Councils' right to participate claim would be ripe only if Energy Corp. had expanded its drilling permit to include hydraulic fracturing without public input.  The court found that Energy Corp.'s diagnostic test did not meet the definition of hydraulic fracturing under Admin. R. M. 36.22.302(28).  Thus, the court concluded that Resource Councils' assertion that hydraulic fracturing had occurred at the Hunt Creek Well was "speculation unsupported by any specific facts."  The District Court concluded therefore that Resource Councils' right to participate claim was unripe for judgment.

---

[2] Resource Councils also claimed that the Board acted arbitrarily and capriciously in approving the permit.  The District Court granted the Board summary judgment on the issue.  Resource Councils do not appeal that holding.

¶12    It is well-established that "the judicial power of Montana's courts is limited to 'justiciable controversies.'" *Reichert*, ¶ 53 (quoting *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567).  A justiciable controversy is, in general terms, "one that is definite and concrete . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Reichert*, ¶ 53 (citations and internal quotations omitted).  Ripeness—which is a specific justiciability doctrine—"is concerned with whether the case presents an 'actual, present' controversy." *Reichert*, ¶ 54 (quoting *Mont. Power Co. v. Mont. Pub. Serv. Comm'n*, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91).  As such, "cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Reichert*, ¶ 54 (citations omitted).

¶13    In their amended complaint, Resource Councils asserted that the Rule

> allows a company to proceed with hydro-fracking upon providing the Board's staff certain specified information 48 hours in advance of commencing hydro-fracking.  The Board staff is under no obligation to take further action, inform the Board or the public of the fact that hydro-fracking will occur at the [Energy Corp.] well.

They asserted further that no additional "environmental review, public participation or Board deliberation is required under the terms of [the Rule]."  Resource Councils argued that the Rule, as applied here, consequently violated their "fundamental right to meaningfully participate in government decisions."  Therefore, contrary to the District Court's conclusion, Resource Councils' right to participate claim does not hinge on whether Energy Corp. engaged in hydraulic fracturing at the Hunt Creek Well.  Rather,

8

their claim centers on whether they had the opportunity to participate in the permitting process.

¶14 It is undisputed that Energy Corp. filed a sundry notice pursuant to the Rule's procedures, which the Board approved. Therefore, the controversy—whether Resource Councils had the opportunity to participate in the process—was not a "hypothetical, speculative, or illusory dispute[ ]." *Reichert*, ¶ 54. On the contrary, Resource Councils' claim that the Board violated their right to participate in applying the Rule raised "an actual, present controversy" because the Board applied the Rule. *Reichert*, ¶ 54 (citation and internal quotations omitted).

¶15 The District Court erred in concluding that Resource Councils' right to participate claim was unripe. We proceed to consider the claim and its merits.

¶16 *2. Whether the Board violated Resource Councils' right to participate.*

¶17 Resource Councils assert that the Board expanded the original well permit's scope when it approved Energy Corp.'s sundry notice pursuant to the Rule because the notice, not the original application for a permit to drill, "is where the operator discloses a desire to chemically stimulate a well and provides specific information about the proposed activities." As such, Resource Councils assert that the "Board failed to provide adequate notice or meaningful opportunity for public participation in the decision making process" that led to the Board's approving chemical stimulation activities under the Rule. Resource Councils argue that the Board therefore violated their fundamental right to

9

participate under both the Public Participation in Governmental Operations Act, §§ 2-3-101 to 2-3-301, MCA, and Article II, Section 8, of the Montana Constitution.

¶18 Resource Councils acknowledge that the Board provided them an opportunity to participate during the February 2014 hearing on Energy Corp.'s application for a permit to drill the exploratory Hunt Creek Well. They contend, however, that that "hearing cannot suffice as a meaningful opportunity to participate in a decision to chemically stimulate the [Energy Corp.] well" because the Board made clear during the hearing that it was considering only an exploratory well, the permit's environmental assessment did not address hydraulic fracturing, and the Board's decision to approve the exploratory well "did not implicate the concerns of the public" regarding hydraulic fracturing. Moreover, Resource Councils allege, the Board "stated it lacked authority or jurisdiction to consider specific concerns regarding" hydraulic fracturing during the hearing. Finally, Resource Councils contend that hydraulic fracturing at the Hunt Creek Well is a matter of significant public interest and therefore the Board was required to adopt procedures to ensure adequate notice and public participation in the Rule's procedural process, which it failed to do.

¶19 The Board counters that its approval of well stimulation activities pursuant to the Rule was not an expansion of the original drilling permit's scope because well stimulation is allowed under a drilling permit. As such, the Board contends, its rules and procedures ensuring notice and public participation during the permitting process include the well stimulation activities allowed under a drilling permit. The Board contends that

10

the record demonstrates that Resource Councils always knew that well stimulation activities could occur under a drilling permit. The Board and Amicus Montana Petroleum Association also maintain that the diagnostic test did not constitute hydraulic fracturing because the test's purpose was to temporarily test the well's reservoir pressure and did not involve well stimulation.

¶20 The Board argues that Resource Councils had the opportunity to participate in—and did participate in—the Board's decision to approve the drilling permit, which included consideration of the potential for hydraulic fracturing at the Hunt Creek Well. As evidence that Resource Councils "meaningfully participated in the Board's decision," the Board points to the considerable testimony Resource Councils' members and their expert provided during the hearing as well as the fact that the Board approved the permit with the condition that Energy Corp. comply with certain water standards should it engage in hydraulic fracturing. Because Resource Councils participated in the permit approval process—which the Board claims included consideration of well stimulation activities—the Board asserts that providing Resource Councils with an additional opportunity to participate was not required.

¶21 "The essential elements" required to meet Montana's constitutional and statutory guarantees of public participation are "notice and an opportunity to be heard." *Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2008 MT 377, ¶ 21, 346 Mont. 507, 198 P.3d 219 (citing § 2-3-103(1)(a), MCA). Public participation procedures "must

11

include a method of affording interested persons reasonable opportunity to submit data, views, or arguments." Section 2-3-111(1), MCA.

¶22    The record demonstrates that Resource Councils had notice not only of the application for a permit to drill, but also of the potential for well stimulation activities at the Hunt Creek Well pursuant to the Rule. Affidavits of Resource Councils' members state explicitly that they received notice of Energy Corp.'s application for a permit to drill. Based on this notice, Resource Councils sent the Board a letter on October 23, 2013, requesting a hearing to discuss their concerns with the proposed permit. The testimony of Resource Councils' members at the hearing focused on the potential negative impacts of hydraulic fracturing at the site. Furthermore, Resource Councils' expert submitted a report that focused, in part, on the risks associated with hydraulic fracturing "[g]iven the likelihood that hydraulic fracturing will take place at the proposed well."

¶23    The record demonstrates further that Resource Councils were given an opportunity to be heard on their concerns about well stimulation activities under the Rule. Although the Board could have declined to hold a hearing due to Resource Councils' procedural problems in objecting to the permit, Admin R. M. 36.22.601(4), the Board held a full hearing on the permit application due, in part, to the "extensive media coverage and public comments received during the public comment period." Resource Councils' members and their expert testified for nearly an hour and a half during the hearing. Their testimony focused on the potential negative environmental impacts associated with

12

hydraulic fracturing at the Hunt Creek Well. The recorded hearing testimony demonstrates that the Board clearly afforded Resource Councils an opportunity "to submit data, views, or arguments" related to well stimulation at the site. Section 2-3-111(1), MCA. Moreover, the Board made clear during the hearing that it retained "the full authority to grant, deny, or grant conditionally the application for a drilling permit." That the Board approved the permit with the condition that Energy Corp. comply with certain water standards should it propose hydraulic fracturing at the Hunt Creek Well in the future demonstrates that Resource Councils were heard on the issue.

¶24 The District Court additionally observed "that the record clearly reflects that the Board has continually guaranteed to [Resource Councils] that [they] will be given the opportunity to weigh in on any [hydraulic fracturing] ventures that might someday be brought forth." During the hearing, the Board's administrator noted that "wastewater and hydraulic fracturing are regulated under the rules [the Board] adopted a couple of years ago. If hydraulic fracturing isn't approved with the drilling permit then there's another process that has to be followed to approve it." The administrator emphasized that "hydraulic fracturing has not been proposed in the permit. The environmental assessment assesses what was proposed, which was a potential horizontal well, but does not propose hydraulic fracturing." In its briefing on appeal, the Board emphatically asserts that hydraulic fracturing has not occurred at the Hunt Creek Well. It does not take issue with the District Court's statement that the Board guaranteed that Resource Councils will be

13

given the opportunity to participate should hydraulic fracturing be proposed at the Hunt Creek Well in the future.

¶25 It is unclear from the record, the Board's briefing, and our review of the pertinent Administrative Rules what process the Board anticipates should Energy Corp. propose hydraulic fracturing at the Hunt Creek Well. The Board's representations, however, demonstrate that it will further consider the matter should Energy Corp. make that proposal, and that it will afford additional process at that time. On this record, we conclude that Resource Councils had notice and an opportunity to participate in the Board's consideration of the permit and to present evidence about their concerns for well stimulation activities at the site. Accordingly—under the facts presented here—the Board did not violate Resource Councils' right to participate.

## CONCLUSION

¶26 We reverse the District Court's holding that Resource Councils' right to participate challenge was unripe; however, we conclude that the Board did not violate Resource Councils' right to participate in applying the Rule to the permit it issued for the Hunt Creek Well.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

14

Chief Justice Mike McGrath, concurring.

¶27 Because of the unique procedural nature of this case, CCRC is left without a resolution on the merits of its constitutional and statutory challenge to the sundry notice and forty-eight-hour provisions of Admin. R. M. 36.22.608.

¶28 The District Court determined that the challenge was not ripe because hydraulic fracturing had not occurred. The majority Opinion, which I have signed, reverses the District Court on ripeness. We conclude that the February 2014 hearing was sufficient to satisfy the right to participate challenges brought regarding the Board's grant of the initial permit to drill, but specifically determine it is unnecessary to decide whether the Board's forty-eight-hour notice rule may be unconstitutional in other circumstances.

¶29 The District Court specifically noted:

> [T]his Court anticipates a claim regarding the constitutionality of Administrative Rules of Montana § 36.22.608(2) may become ripe for adjudication in the future if it is used to expand an APD to include fracking. The Court notes that 48 hours is a short notification period in this developing industry and recognizes that other states have expanded this time frame.

The District Court's anticipation was strongly anchored in the record. Both the administrator and the Board made it clear they were considering a vertical wildcat well and that fracking was not proposed. As the majority notes, the Board does not challenge the District Court's assumption and has continually guaranteed that the plaintiffs will have the opportunity to participate should any "[hydraulic] fracking ventures . . . someday be brought forth."

15

¶30    The Board asserts in its brief to this Court that hydraulic fracturing has not occurred at, or been proposed for, this well.  It is with this understanding that I have signed the majority Opinion.  If hydraulic fracturing is proposed for this well, the Board will implement procedure to ensure that the public's right to a meaningful opportunity to participate is protected.

¶31    I concur.

/S/ MIKE McGRATH

Justices James Jeremiah Shea and Michael E Wheat join the concurring Opinion of Chief Justice Mike McGrath.

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA