FILED

03/08/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0314

DA 21-0314

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 46

ADVOCATES FOR SCHOOL TRUST LANDS,

Plaintiff and Appellant,

and K.B. and K.B., by and through
their parent and general guardian,

Plaintiffs,

v.

THE STATE OF MONTANA,

Defendant and Appellee,

and

MONTANA FARM BUREAU FEDERATION, MONTANA
STOCKGROWERS ASSOCIATION, MONTANA WATER
RESOURCES ASSOCIATION, ASSOCIATION OF
GALLATIN AGRICULTURAL IRRIGATORS,

Intervenors and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2019-1272
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Roy H. Andes, Attorney at Law, Driggs, Idaho

For Appellee State of Montana:

Austin Knudsen, Montana Attorney General, Christian B. Corrigan,
Assistant Solicitor General, Helena, Montana

Rachel K. Meredith, Office of the Governor, Helena, Montana

Emily Jones, Special Assistant Attorney General, Jones Law Firm, PLLC, Billings, Montana

For Intervenors:

Hertha L. Lund, Christopher T. Scoones, Ben F. Stormes, Lund Law, PLLC, Bozeman, Montana

For Amicus Curiae Rural Montana Foundation:

William W. Mercer, Matthew H. Dolphay, Holland & Hart LLP, Billings, Montana

Submitted on Briefs:  January 26, 2022

Decided:  March 8, 2022

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Appellant Advocates for School Trust Lands (Advocates) challenges the constitutionality of House Bill 286 (HB 286), passed by the 2019 Montana Legislature and codified as § 85-2-441, MCA. Advocates alleges that HB 286 violates the Montana Constitution and the 1889 Enabling Act by creating a presumption against State ownership in ground water diverted from private property for use on leased school trust land, thereby reducing the value of those lands. We consider the following restated issues and affirm.

1. *Did the District Court err when it granted summary judgment to the State on the ground that Advocates' challenge to HB 286 is unripe?*

2. *Did the District Court abuse its discretion when it denied Advocates' motion to amend its complaint on the ground that adding an as-applied challenge would be futile?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 The Department of Natural Resources and Conservation (DNRC), through its Trust Lands Management Division (TLMD), manages, among other things, state trust lands for the State Board of Land Commissioners, which administers approximately five million school trust land acres. In 2015, TLMD discovered that the State was not listed as an owner on approximately 141 post-July 1, 1973 (post-1973) ground water rights developed or diverted on private land but used on school trust lands. TLMD subsequently filed 141 Water Right Ownership Update Forms (Form 608)—forms typically used to update contact information and to voluntarily transfer water rights—with the DNRC Water Rights Bureau to add the State as co-owner on each water right. Though TLMD notified the affected

3

water rights owners of the change, these private water rights holders had no statutory mechanism with which to object to TLMD's Form 608 filings.

¶3 In response, the 2019 Legislature passed HB 286, codified as § 85-2-441, MCA, to remedy potential due process concerns arising from TLMD's and DNRC's involuntary transfers of private water rights using Form 608. HB 286 created a process by which the State could acquire water rights in privately developed or diverted ground water used on school trust lands. The bill also required the State to rescind any claim to such water rights asserted prior to May 11, 2019—the law's effective date—if it had not complied with the new statutory process; presumably, this included the 141 water rights at issue in 2015.

¶4 Advocates is a non-profit organization working to ensure that the Montana Constitution's trust land commitment is honored. It is the successor in interest to Montanans for Responsible Use of the School Trust (MonTRUST). In September 2019, Advocates filed a complaint for declaratory relief and a permanent injunction against the State, alleging in part that HB 286 is facially unconstitutional because it violates the State's trust obligations imposed by the Enabling Act and the Montana Constitution. Several proponents of HB 286 joined as Intervenors, and Rural Montana Foundation participated as Amicus Curiae for the State. In October 2020, Advocates sought to amend its complaint to include an as-applied challenge to HB 286 and a request for attorney fees. The State moved for summary judgment, and Advocates moved for partial summary judgment. On April 12, 2021, the District Court denied Advocates' motion to amend and granted summary judgment to the State on the grounds that Advocates' claim was unripe and its proposed amendment was futile.

## STANDARDS OF REVIEW

¶5 We review a district court's grant of summary judgment de novo. *Confederated Salish & Kootenai Tribes v. Clinch*, 2007 MT 63, ¶ 5, 336 Mont. 302, 158 P.3d 377 (citation omitted). "Issues of justiciability—such as standing, mootness, ripeness, and political question—are questions of law that we also review de novo." *Carbon Cty. Res. Council v. Mont. Bd. of Oil & Gas Conserv.*, 2016 MT 240, ¶ 9, 385 Mont. 51, 380 P.3d 798 (citation omitted).

¶6 We review a district court's interpretation of a statute de novo. *Clark Fork Coal. v. Tubbs*, 2016 MT 229, ¶ 18, 384 Mont. 503, 380 P.3d 771 (citation omitted).

¶7 We review a district court's denial of a motion to amend a complaint for abuse of discretion. *Emanuel v. Great Falls Sch. Dist.*, 2009 MT 185, ¶ 18, 351 Mont. 56, 209 P.3d 244. But we review de novo whether the movant's proposed amendment would be futile. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016).

## DISCUSSION

### Enabling Act of 1889

¶8 Under the Enabling Act of February 22, 1889, the federal government granted to the State of Montana lands "for the support of common schools." *Montanans for the Resp. Use of the Sch. Tr. v. State ex rel. Bd. of Land Comm'rs*, 1999 MT 263, ¶ 13, 296 Mont. 402, 989 P.2d 800 (hereinafter *MonTRUST I*) (citation omitted). As explained in *MonTRUST I*, ¶ 13, this grant constituted a trust (Trust), the terms of which are set out in Article X, Section 11, of the Montana Constitution:

(1)  All lands of the state that have been or may be granted by [C]ongress
. . . shall be public lands of the state.  They shall be held in trust for the people,
to be disposed of as hereafter provided, for the respective purposes for which
they have been or may be granted, donated or devised.

(2)  No such land or any estate or interest therein shall ever be disposed of
except in pursuance of general laws providing for such disposition, or until
the full market value of the estate or interest disposed of, to be ascertained in
such manner as may be provided by law, has been paid or safely secured to
the state.

(3)  No land which the state holds by grant from the United States which
prescribes the manner of disposal and minimum price shall be disposed of
except in the manner and for at least the price prescribed without the consent
of the United States.

(4)  All public land shall be classified by the board of land commissioners in
a manner provided by law.  Any public land may be exchanged for other
land, public or private, which is equal in value and, as closely as possible,
equal in area.

We have interpreted these provisions to mean that the State cannot lease an interest in

school trust lands if the lease would abrogate the concept of full market value.

*MonTRUST I*, ¶ 36 (citing *Jerke v. State Dep't of Lands*, 182 Mont. 294, 296, 597 P.2d 49,

51 (1979) (citing *Rider v. Cooney*, 94 Mont. 295, 309-10, 23 P.2d 261, 264 (1933))).  The

Legislature has the authority to determine the method by which full market value is

ascertained.  *Jerke*, 182 Mont. at 296, 597 P.2d at 51.

¶9      In *MonTRUST I*, we determined that several statutes and DNRC policies involving

the leasing of school trust lands and resources were facially unconstitutional because they

violated the State's obligation to obtain full market value for trust lands.

*MonTRUST I*, ¶¶ 23, 32, 42, 51, 58.  Among the laws invalidated in *MonTRUST I* was a

statute that required the DNRC to charge 1972 market values for historic right-of-way

6

deeds; a DNRC policy of charging "significantly below fair market value" for cabin rentals; a statute that authorized the State to issue firewood permits without charging for commercially valuable wood; a statute that granted former lessees up to sixty days to remove movable improvements without charge; and a statute that "allow[ed] trust lands to idle indefinitely" between lessees. *MonTRUST I*, ¶¶ 23, 32, 42, 51, 58. The key inquiry was whether "the State, in implementing the statute[s], violated its fiduciary duty to obtain full market value." *Montanans for the Resp. Use of the Sch. Tr. v. Darkenwald*, 2005 MT 190, ¶ 42, 328 Mont. 105, 119 P.3d 27 (citing *MonTRUST I*, ¶ 36).

**Montana Water Use Act**

¶10    "All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for the beneficial uses as provided by law." Mont. Const. art. IX, § 3(3). "The legislature shall provide for the administration, control, and regulation of water rights and shall establish a system of centralized records, in addition to the present system of local records." Mont. Const. art. IX, § 3(4). Just as the 1889 Montana Constitution "explicitly recognized the right to sell and rent water to others as a beneficial use," our current Constitution "shows a steadfast commitment to recognizing the ability to appropriate water for its ultimate use by a third party." *Curry v. Pondera Cty. Canal & Reservoir Co.*, 2016 MT 77, ¶ 25, 383 Mont. 93, 370 P.3d 440 (citing Mont. Const. art. III, § 15 (1889)).

¶11    Prior to the enactment of the 1973 Montana Water Use Act (WUA), §§ 85-1-101 et seq., MCA, a water appropriator could obtain a water right by one of two methods: (1) intending to put the water to beneficial use and using the water as intended

7

("use right"); or (2) complying with the statutory requirements of record notice ("filed right"). *Murray v. Tingley*, 20 Mont. 260, 268, 50 P. 723, 725 (1897); *see also Hoon v. Murphy*, 2020 MT 50, ¶¶ 34-35, 399 Mont. 110, 460 P.3d 849; *Mont. Power Co. v. Carey*, 211 Mont. 91, 96-97, 685 P.2d 336, 339 (1984); Stephen R. Brown, Michelle L. Bryan & Russ McElyea, *Montana Water Law*, 36 (Rocky Mt. Min. L. Fdn. 2021). As neither method provided the State of Montana any means to regulate proposed water uses to accommodate available flows, protect senior water rights, or protect the public interest, the WUA "substituted a new procedure for the appropriation of water rights[.]" *Carey*, 211 Mont. at 97, 685 P.2d at 339-40 (citation and quotation omitted).

¶12    The WUA "sets forth the statutory framework under which water rights are to be obtained, administered, and adjudicated." *Tubbs*, ¶ 5. The WUA requires new water appropriators to apply to the DNRC for a permit. *Tubbs*, ¶ 5 (citing § 85-2-301, MCA). Post-1973, "[a] right to appropriate water may not be acquired by any other method," except as provided by the WUA. Section 85-2-301(1), (3), MCA. Water rights perfected prior to that date, by contrast, are not subject to the WUA's permit requirements and are protected under the law as it existed prior to the adoption of the WUA, subject to adjudication in the Water Court. Section 85-2-102(13), MCA; *Hoon*, ¶¶ 33-34.

¶13    *1. Whether the District Court erred when it granted summary judgment to the State on the ground that Advocates' challenge to HB 286 is unripe.*

¶14    HB 286 addresses the process by which the State may obtain ownership of water rights for water developed or diverted on private land for use on school trust land.

8

Subsection (1) provides that a "water right owner may put water . . . on private land to beneficial use on state trust land for the duration of the state land lease the water right owner holds." Section 85-2-441(1), MCA. Subsection (2) provides that the State may not obtain ownership over such water rights unless "a court of competent jurisdiction determines that the state is an owner of that particular water right" or "the state is in possession of a deed transferring ownership of the water right to the state." Section 85-2-441(2), MCA.

¶15 Advocates argues that HB 286 is facially unconstitutional because it violates the State's trust obligations under the Enabling Act and the Montana Constitution by relinquishing State ownership of water rights on school trust lands, contrary to our holding in *Mont. Dep't of State Lands v. Pettibone*, 216 Mont. 361, 702 P.2d 948 (1985).

¶16 We held in *Pettibone* that the State owns water rights developed and put to beneficial use on school trust lands. 216 Mont. at 368, 702 P.2d at 952. At issue were twenty-three pre-1973 water rights on school trust lands to which the lessees of those lands claimed ownership. *Pettibone*, 216 Mont. at 364-66, 702 P.2d at 950-51. We identified two relevant implications stemming from the State's trust obligations under the Enabling Act: "[f]irst, an interest in school land cannot be alienated unless the trust receives adequate compensation for that interest"; and "[s]econd, any law or policy that infringes on the state's managerial prerogatives over the school lands cannot be tolerated if it reduces the value of the land." *Pettibone*, 216 Mont. at 371, 702 P.2d at 954. Advocates contends that HB 286 reduces the value of the affected school trust lands because it plainly asserts that "[t]he state may not obtain an ownership interest in a water right . . . located on private land

9

exclusively based on trustee obligations," except through adjudication or a voluntary transfer of ownership. *See* § 85-2-441(2), MCA.

¶17 The District Court held that Advocates' facial challenge to § 85-2-441, MCA, was unripe because "nothing in HB 286's plain language . . . impairs Montana's sovereign trustee duties or trust land 'management prerogatives' to ensure that trust lands are not devalued by any policy or law." (Quoting *MonTRUST I*, ¶ 36.) The court found an "inadequate factual record upon which to base effective review" of the substance of the claim. (Citing *Reichert v. State*, 2012 MT 111, ¶ 56, 365 Mont. 92, 278 P.3d 455.)

¶18 The Montana Constitution grants state courts original jurisdiction over "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4(1). We have stated that the "cases at law and in equity" language "embodies the same limitations as are imposed on federal courts by the 'case or controversy' language of Article III." *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567 (citations omitted). It is well settled that "[t]he judicial power of the courts of Montana is limited to justiciable controversies." *Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881 (citations omitted); *Dennis v. Brown*, 2005 MT 85, ¶ 8, 326 Mont. 422, 110 P.3d 17 (citation omitted); *Powder River Cty. v. State*, 2002 MT 259, ¶ 101, 312 Mont. 198, 60 P.3d 357 (citation omitted). Justiciability therefore is a threshold requirement that must be met before a court may grant relief. *See Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶¶ 17-19, 293 Mont. 188, 974 P.2d 1150.

¶19    "The central concepts of justiciability have been elaborated into more specific categories of doctrines," including standing, ripeness, and mootness. *Kulko v. Davail, Inc.*, 2015 MT 340, ¶ 19, 381 Mont. 511, 363 P.3d 430 (citation omitted).  "In analyzing ripeness, it is helpful to understand its relationship to standing and mootness." *Reichert*, ¶ 55.  Standing requires the plaintiff to "clearly allege a past, present, or threatened injury to a property or civil right, and the injury must be one that would be alleviated by successfully maintaining the action."  *Reichert*, ¶ 55 (citation omitted). "Ripeness and mootness, in turn, can be seen as 'the time dimensions of standing.'" *Reichert*, ¶ 55 (quoting Charles Alan Wright et al., *Federal Practice and Procedure* vol. 13B, § 3531.12, 163 (3d ed., Thomson/West 2008)).  The central concern of ripeness is "whether an injury that has not yet happened is sufficiently likely to happen or, instead, is too contingent or remote to support present adjudication." *Reichert*, ¶ 55.

¶20    "A case is considered ripe when it presents an 'actual, present' controversy that is not a hypothetical or speculative dispute."  Carina Wilmot, Reichert v. State ex rel. McCulloch *and the Open Door for Increased Pre-Election Substantive Judicial Review*, 74 Mont. L. Rev. 441, 444 (2014) (quoting *Mont. Power Co. v. Mont. PSC*, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91 (citing *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶ 30, 298 Mont. 52, 993 P.2d 688) (other citations omitted)).  There are two components to ripeness: a constitutional component and a prudential component. *Reichert*, ¶ 56 (citation omitted).  "The constitutional component asks whether there is sufficient injury" or, framed differently, whether the issues presented are "definite and concrete, not hypothetical or abstract."  *Reichert*, ¶ 56 (citing *Wolfson v. Brammer*,

11

616 F.3d 1045, 1058 (9th Cir. 2010)). The constitutional component therefore is closely tied to standing. *Reichert*, ¶ 56; *see also Weems v. State*, 2019 MT 98, ¶ 11, 395 Mont. 350, 440 P.3d 4. The prudential component weighs "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Reichert*, ¶ 56 (citation omitted). The prudential component demands consideration of whether the record presented is "factually adequate." *Reichert*, ¶ 56 (citations omitted). "The more the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe, and vice-versa." *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 20, 333 Mont. 331, 142 P.3d 864 (citation omitted); *see also Abbott Labs v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 1515 (1967).

¶21 We considered in *Montana Power Company* whether the Montana Power Company's (MPC) action for judicial review of a Montana Public Service Commission (Commission) order was ripe. *Mont. Power Co.*, ¶¶ 13-14, 32. Under the Electric Utility Restructuring and Customer Choice Act (Act), the Commission was charged with administering a statutorily mandated restructuring and deregulation of utilities, such as the MPC. *Mont. Power Co.*, ¶¶ 5-6. The Act allowed utilities to file proposals for the recovery of some transition and deregulation costs, including future uncertain costs if the cost estimates were "reasonably demonstrable" and approved by the Commission. *Mont. Power Co.*, ¶¶ 8-9. But the Commission could not make this determination without first conducting a hearing and issuing a final order. *Mont. Power Co.*, ¶ 9. Due to the uncertainty of calculating future costs, MPC asked the Commission to waive the estimate requirement for some of its future transition costs and to instead "track" those costs over

12

the next twenty-five to thirty years, until a more accurate figure could be determined. *Mont. Power Co.*, ¶ 11. The Commission found, however, that it was not required to track MPC's transition costs under the Act. *Mont. Power Co.*, ¶ 13. Before the Commission conducted a hearing or issued an order regarding MPC's transition costs, MPC sought judicial review of the Commission's refusal to use its tracker system on the ground that the Commission would violate MPC's constitutional rights in the future by depriving it of its property without the accuracy of a tracking system. *Mont. Power Co.*, ¶¶ 16, 33. We held that MPC's claim of a constitutional taking was "hypothetical and speculative" and thus not ripe for judicial review. *Mont. Power Co.*, ¶ 36. MPC's claim depended on the assumption that its cost estimates would turn out to be too low, in which case it might recover less than its actual transition costs. *Mont. Power Co.*, ¶ 37. This, we held, was not a "real" or "imminent" injury. *Mont. Power Co.*, ¶ 38.

¶22 We considered similarly whether facial and as-applied challenges to the constitutionality of the Sentence Review Division (SRD) were ripe for judicial review in *State v. Whalen*, where the appellant had not yet pursued sentence review from the SRD. 2013 MT 26, ¶ 39, 368 Mont. 354, 295 P.3d 1055. Whalen argued that the SRD process threatened him with an additional sentence and that, if he was required to avail himself of the SRD process, he would be harmed by having to wait through additional years of incarceration. *Whalen*, ¶ 39. We held that Whalen's challenge was not ripe for review because he had "not proceeded through the sentence review process" and it was unknown whether he would apply for sentence review or, if he did, what the result of the SRD process would be. *Whalen*, ¶ 42.

13

¶23 We considered in *Weems* whether a Certified Nurse Practitioner's (CNP) and Certified Nurse Midwife's (CNM) challenges to a statute that restricted the performance of pre-viability abortions to only licensed physicians and certified physician assistants were ripe for review. *Weems*, ¶ 1. The central dispute between the parties was whether the allegedly unconstitutional statute was "the regulatory barrier that prevent[ed] [the plaintiffs] from performing aspiration and medication abortion procedures, or whether the Board of Nursing must act first to authorize such procedures within the plaintiffs' scope of practice before the statute comes into play." *Weems*, ¶ 13. We held that the plaintiffs' alleged injuries were indeed concrete, rather than hypothetical or abstract, because the statute itself is what precluded the plaintiffs from being licensed by the Board to perform the medical procedures at issue. *Weems*, ¶¶ 13-14. Stated differently, the very enactment of the statute threatened to deprive the plaintiffs of a constitutional right.

¶24 Advocates maintains that its facial challenge to HB 286 is ripe for review. It relies primarily on two arguments to show that the enactment of HB 286 caused Advocates a definite and concrete injury: (1) HB 286 *ipso facto* reduces the value of the affected school trust lands, pursuant to *Pettibone*, and (2) HB 286 creates a presumption against State ownership of water rights used on state lands.

¶25 Advocates' first contention, that HB 286 *ipso facto* reduces the value of the affected school trust lands, is grounded in *Pettibone*'s observation that a lessee who owned a water right on school trust land "would in effect be able to control the use of the land." *Pettibone*, 216 Mont. at 373, 702 P.2d at 955. Unlike *Pettibone*, however, where the Water Court

14

erroneously granted the lessees pre-1973 "use rights" in school trust land waters, Advocates' alleged injury depends on the occurrence of future, hypothetical events.

¶26 As in *Montana Power Company*, where MPC claimed that it would be deprived of a property interest if its tracker system was not used, Advocates' assertion that HB 286 reduces the value of the lands is similarly remote and abstract. Similar also to *Whalen*, where the defendant claimed that the SRD was facially unconstitutional prior to seeking sentence review, it is unknown whether HB 286 will decrease the value of any affected school trust lands unless and until the State uses the statute to assert the Trust's rights. Advocates' argument that HB 286 reduces the value of the school trust lands is not, therefore, a definite and concrete injury but an anticipated one that depends on the occurrence of future events.

¶27 *Weems*, on the other hand, is readily distinguishable from Advocates' reduction-in-value claim. Whereas in *Weems* the statute itself was "the regulatory barrier" that deprived plaintiffs of a constitutional right, Advocates' alleged constitutional injury from the devaluing of school trust lands depends on further action (or inaction) by the State in the future. Advocates does not allege that the State has invoked HB 286 and been denied a particular water right. Nor does it identify any particular parcel of school trust land that has diminished in value as a result of HB 286. Without such a factual record, Advocates identifies only a hypothetical injury, insufficient to satisfy the constitutional component of ripeness. The State's ownership of particular water rights may be addressed in a water court or DNRC proceeding like any other adjudication and, if the result allegedly impairs the value of the trust lands, those decisions may be challenged in the proper court—either

15

on appeal to this Court from the Water Court or through judicial review of the agency's action.[1]  Because Advocates' argument that HB 286 reduces the value of school trust lands hinges on the development of additional facts, the prudential component of ripeness also fails here.  Whether HB 286 does or does not reduce the value of school trust lands is not purely a question of law but requires a "factually adequate" record.  *See Reichert*, ¶ 56.

¶28    Advocates' second contention, that HB 286 creates a presumption about the water rights on school trust lands, is different.  As in *Weems*, where the statute itself allegedly deprived the plaintiffs of a constitutional right, this argument does not depend on the development of particular facts; the alleged constitutional injury is the purported presumption against State ownership.  Advocates maintains that the presumption created by HB 286 violates the State's trust obligations.  This argument, in contrast to the previous one, does not depend on further State action or adjudication.  It alleges a definite and concrete injury because Advocates claims that the presumption against State ownership violates the Trust.

¶29    An examination of the State's arguments fails to convince us that this aspect of the claim is not ripe.  The State first contends, incorrectly, that Advocates did not argue ripeness in its opening brief and thus waived that argument on appeal.  Advocates clearly addressed the constitutional component of ripeness by arguing in its opening brief that it has suffered a definite and concrete injury.  It also analyzed the prudential component of

_____

[1] DNRC permitting decisions under Title 85, Chapter 2, Part 3 are subject to judicial review under the Montana Administrative Procedures Act.  *See Clark Fork Coal. v. Mont. DNRC*, 2021 MT 44, ¶ 31, 403 Mont. 225, 481 P.3d 198.

ripeness by arguing that withholding judicial review will cost the Trust valuable resources. Second, the State argues that Advocates' claim does not pertain to individual water rights and thus is factually inadequate. But a facial challenge may be ripe if it does not depend on the development of a factual record. *See Reichert*, ¶ 60; *Havre Daily News*, ¶ 20. The crux of a facial challenge is that the statute is unconstitutional in all its applications. *Hensley v. Mont. State Fund*, 2020 MT 317, ¶ 17, 402 Mont. 277, 477 P.3d 1065. Though Advocates' first argument requires additional factual development, its second argument asks the Court to find constitutional infirmity from HB 286's operation in every case. As Advocates points out, HB 286 nullified the State's interest in 141 water rights it already obtained through the Form 608 process, giving rise to a sufficiently concrete harm that is ripe for review. Finally, citing *Montana Power Company* and other administrative law cases, the State maintains that Advocates' asserted injury is merely speculative because HB 286 is procedural in nature. We conclude that this last point, though valid, pertains to the merits of Advocates' challenge, not to the ripeness of that asserted claim.

¶30    We thus turn to the merits of Advocates' facial challenge to HB 286 on the ground that it creates a presumption against State ownership. Advocates relies heavily on *Pettibone* for this argument; it ignores, however, the obvious procedural dissimilarities between *Pettibone* and the instant case. *Pettibone* reached this Court on appeal from the Water Court, which granted the lessees of twenty-three school trust lands pre-1973 "use rights" in waters diverted or developed on those lands. *Pettibone*, 216 Mont. at 366, 702 P.2d at 951. As pre-1973 water rights, their ownership was at issue because of the general water rights adjudication underway in Montana. *Pettibone*, 216 Mont. at 367,

17

702 P.2d at 951. This was precisely the point of enacting the 1973 WUA and creating the Water Court system, as we explained in *Pettibone*, 216 Mont. at 367-68, 702 P.2d at 951-52. We held on appeal that granting those water rights to the lessees diminished the value of the lands and violated the State's obligations to the Trust. *Pettibone*, 216 Mont. at 368, 702 P.2d at 952. Here, by contrast, it is undisputed that the private landowners obtained DNRC permits for these post-1973 water rights. Both the State and Advocates acknowledge that the attempted transfer of permitted water rights by TLMD in 2015 was improper. There is no indication, therefore, that HB 286 "granted" the private landowners anything other than a process. The statute does not use the word "presumption" or include other language placing trust ownership at a disadvantage in that process. HB 286 simply maintains the status quo until the State asserts its ownership of water rights in the affected lands while preventing potential due process issues raised by the invalid 2015 transfer. "[I]t is paramount that we give such construction to the statute as will preserve the constitutional rights of the parties." *Mont. Power Co.*, ¶ 33. Construing HB 286 by its plain language as a procedural mechanism preserves both Advocates' rights and those of the water rights holders.

¶31 The District Court correctly concluded that "nothing in HB 286's plain language . . . impairs Montana's sovereign trustee duties or trust land management prerogatives to ensure that trust lands are not devalued by any policy or law." *See Pettibone*, 216 Mont. at 371, 702 P.2d at 954. This conclusion, however, supports a determination that HB 286 is facially constitutional, not that Advocates' claim is unripe. We may affirm a district court's ruling on any ground supported by the record, regardless of the court's

18

reasoning. *State v. Wilson*, 2022 MT 11, ¶ 34, 407 Mont. 225, __ P.3d __. We agree with Advocates that whether HB 286 on its face creates a presumption against State ownership is ripe for review. We reject that argument, however, on its merits. The plain language of the statute neither establishes a presumption nor deprives Advocates of a constitutionally protected interest. As such, the District Court did not err by granting summary judgment to the State.

¶32 *2. Whether the District Court abused its discretion when it denied Advocates' motion to amend its complaint on the ground that adding an as-applied challenge would be futile.*

¶33 Except where pleadings are amended "as a matter of course," *see* M. R. Civ. P. 15(a)(1), "a party may amend its pleadings only with the opposing party's written consent or the court's leave." M. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." M. R. Civ. P. 15(a)(2). Though "[w]e interpret the rule liberally so that allowance of amendments is the general rule and denial is the exception," a district court nonetheless may deny an amendment for reasons such as "undue delay, bad faith or dilatory motive[,] . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice[,] . . . [or] futility." *Diana's Great Idea, LLC v. Jarrett*, 2020 MT 199, ¶ 16, 401 Mont. 1, 471 P.3d 38 (citations omitted).

¶34 Advocates filed a motion to amend its complaint to add as-applied constitutional challenges to HB 286 and § 85-2-306(1), MCA, under the same legal theory—that the State violated its trust obligations—and to add attorney fees and costs. Section 85-2-306(1)(a), MCA, states that "ground water may be appropriated only by a person who has a possessory interest in the property where the water is to be put to

19

beneficial use and exclusive property rights in the ground water development works." The State cited this statute in response to an interrogatory to show that prior to the passage of HB 286 it could not have obtained ownership over the water rights at issue here. Advocates argued that the State's interrogatory response "falsely links the constitutionality" of HB 286 to § 85-2-306(1)(a), MCA, and thus necessitates a combined analysis.

¶35    Advocates supported its motion with a partial transcript of the HB 286 legislative hearings, a declaration of a DNRC Water Rights Specialist, and a portion of the State's discovery responses. None of the attached documents, however, showed that HB 286 or § 85-2-306(1), MCA, had been applied in a manner that reduced or threatened to reduce the value of school trust lands. Finding that Advocates "alleged no additional facts to show that [its] as-applied challenge[s] . . . are ripe," the District Court denied the motion on the ground that the amendment would be futile.

¶36    It is not an abuse of discretion to deny a motion to amend for futility when it is clear that the complaint would not be saved by the amendment. *Cavalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010). Conversely, "it is an abuse of discretion to deny leave to amend [on grounds of futility] where it cannot be said that the pleader can develop no set of facts under its proposed amendment that would entitle the pleader to the relief sought." *Hobble-Diamond Cattle Co. v. Triangle Irrigation Co.*, 249 Mont. 322, 325, 815 P.2d 1153, 1155-56 (1991). But the question whether the proposed amendment entitles the plaintiff to relief (i.e., is or is not futile) is a question of law. *See United Health*, 848 F.3d at 1172.

¶37  We thus review de novo the futility of Advocates' proposed amendment to determine whether it cures the ripeness problems identified by the District Court. *See United Health*, 848 F.3d at 1172.  As stated above, Advocates must present an "actual, present controversy that is not hypothetical or speculative." *Mont. Power Co.*, ¶ 32.  It must show a concrete and definite injury by alleging sufficient facts to establish that a specific application of HB 286 or § 85-2-306(1), MCA, alienated an interest in trust land without adequate compensation or infringed on the State's managerial prerogatives and reduced the value of the land.  *See Pettibone*, 216 Mont. at 371, 702 P.2d at 954.

¶38  Citing *City of Missoula v. Mt. Water Co.*, 2018 MT 139, ¶ 29, 391 Mont. 422, 419 P.3d 685, Advocates argues that the District Court should have permitted its amendment because the as-applied challenges require further fact development.  In *City of Missoula*, we reversed on summary judgment the denial of an appellant's as-applied challenge to a statute limiting "necessary expenses of litigation" to "the customary hourly rates for an attorney's services in the county in which the trial is held." *City of Missoula*, ¶ 29; *see* § 70-30-306(2), MCA.  Because it was an as-applied challenge, we explained that the appellant was "entitled to limited discovery" related to "the approach taken by the City to prosecute the action and the corresponding expenses incurred by the City." *City of Missoula*, ¶ 29.  That an as-applied challenge to a statute necessarily requires more fact development than a facial challenge does not relieve a party of its burden to present a justiciable claim.  On the contrary, the prudential component of ripeness is *more* demanding when a claim is less a "pure[ ] question of law" and more dependent on facts. *See Havre Daily News*, ¶ 20.  *City of Missoula* is not on point.  There, the district court did

21

not dismiss the as-applied challenge as nonjusticiable; it dismissed it on the merits of the party's constitutional claim.

¶39 Advocates maintains that the amended complaint does indeed contain sufficient allegations of lost value to the trust lands. But the only evidence Advocates cites beyond opponents' legislative testimony is the State's assertion in discovery that no one has performed any computation concerning the total water rights or values affected by HB 286. Absence of evidence of value is not evidence of reduced value. Advocates does not explain how further discovery will reveal more facts of diminished value when there as yet have been no proceedings conducted under HB 286.

¶40 In *Hobble-Diamond*, a plaintiff (Hobble-Diamond) suffered damages from the malfunction of a pivot sprinkler system installed by Triangle Irrigation. *Hobble-Diamond*, 249 Mont. at 323, 815 P.2d at 1154. Hobble-Diamond initially sought relief for damages caused by two defective pivots in the irrigation system but later moved to amend its complaint to add damages arising from the malfunction of a third pivot. *Hobble-Diamond*, 249 Mont. at 323, 815 P.2d at 1154. Along with its motion to amend, Hobble-Diamond submitted two reports suggesting the third pivot was defective—one from a Triangle Irrigation employee and another from an independent engineering consultant—and an affidavit of Hobble-Diamond's principal describing problems caused by the third pivot. *Hobble-Diamond*, 249 Mont. at 324-25, 815 P.2d at 1155. Because Hobble-Diamond presented "evidence that it had new information available to it regarding possible crop loss due to an inadequate pivot," we held that the district court abused its discretion when it denied Hobble-Diamond's motion. *Hobble-Diamond*, 249 Mont. at 325-26,

22

815 P.2d at 1155-56. We rejected Triangle Irrigation's argument that the principal's affidavit contradicted his earlier deposition testimony because that contention was "relevant to his credibility as a witness rather than the merits of the amendment." *Hobble-Diamond*, 249 Mont. at 325-26, 815 P.2d at 1156.

¶41 Unlike *Hobble-Diamond*, where the plaintiff presented newly discovered facts supporting a third theory of recovery, Advocates does not present any new facts that could state a ripe claim. *See Hobble-Diamond*, 249 Mont. at 325-26, 815 P.2d at 1155-56. Whereas Triangle Irrigation's only defense was that the new facts asserted by Hobble-Diamond contradicted an earlier deposition of Hobble-Diamond's principal, Advocates' proposed amendment suffers the same deficiencies as its initial complaint. *See Hobble-Diamond*, 249 Mont. at 325-26, 815 P.2d at 1156. Legislative testimony and hypotheses regarding the value of these lands will not supply the missing link here—that the State invoked HB 286 or § 85-2-306(1), MCA, in a way that alienated an interest in school trust lands without adequate compensation or reduced the value of the land. The District Court found, and we agree, that the additional facts and claims Advocates proposed would not present a definite, concrete injury. Advocates, therefore, cannot overcome the justiciability defects of its initial complaint. It is clear that the proposed amendment would not have saved Advocates' complaint. Therefore, the District Court did not abuse its discretion when it denied Advocates' motion to amend as futile.

## CONCLUSION

¶42    We affirm the District Court's April 12, 2021 Order denying leave to amend and awarding judgment in favor of the State.

                                         /S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE