FILED

12/23/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0369

DA 24-0369

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 294

PARKER NOLAND,

      Plaintiff and Appellant,

      v.

STATE OF MONTANA, MONTANA PUBLIC
SERVICE COMMISSION, JAMES BROWN,
in his official capacity as President of the
Montana Public Service Commission,
BRAD JOHNSON, in his official capacity
as Vice-President of the Montana Public
Service Commission, and RANDY PINOCCI,
TONY O'DONNELL, and JENNIFER FIELDER
in their official capacities as Commissioners
of the Montana Public Service Commission,

      Defendants and Appellees,

EVERGREEN DISPOSAL, INC.,

      Intervenor and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-22-1308
                 Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Ethan W. Blevins, Pacific Legal Foundation, Bountiful, Utah

            Jack E. Brown, Pacific Legal Foundation, Arlington, Virginia

            Glenn E. Roper, Pacific Legal Foundation, Highlands Ranch, Colorado

For Appellees:

    Austin Knudsen, Montana Attorney General, Michael Russell, Alwyn Lansing, Thane P. Johnson, Assistant Attorneys General, Helena, Montana

For Intervenor Evergreen Disposal:

    Jacqueline R. Papez, Dry Creek Law Firm, PLLC, Red Lodge, Montana

For Amicus Montana Solid Waste Contractors:

    James R. Zadick, Ugrin Alexander Zadick, P.C., Great Falls, Montana

For Amicus The Goldwater Institute:

    Walter D. Clapp, Honor Coin Law, PLLC, Red Lodge, Montana

For Amici Cato Institute and Mountain States Legal Foundation:

    Matthew G. Monforton, Monforton Law Offices, PLLC, Bozeman, Montana

Submitted on Briefs:  July 30, 2025

Decided:  December 23, 2025

Filed:

_____
Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1 Parker Noland brings this appeal following the District Court's granting of Summary Judgment to the State of Montana and Intervenor Evergreen Disposal (Defendants). Noland sued the State under the Uniform Declaratory Judgments Act, seeking to declare two provisions of the Montana Motor Carrier law unconstitutional under the Montana Constitution and the Fourteenth Amendment of the United States Constitution. The District Court concluded Noland does not have standing to bring an as-applied challenge, and the challenged statutory provisions are not facially unconstitutional. We affirm in part, reverse in part, and remand.

¶2 We restate the issues on appeal as follows:

*Issue One: Whether Noland has standing to challenge the constitutionality of the public convenience and necessity provisions of the Montana Motor Carrier law.*

*Issue Two: Whether the District Court correctly determined Noland's facial challenge failed because some applicants received a Class D motor carrier certificate.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Having worked construction jobs in Flathead County, Parker Noland was dissatisfied with the service rendered by the area's waste disposal companies and determined there was an opportunity to earn money removing construction debris. Noland formed a business, PBN LLC, providing construction debris removal, unaware of any licensing and regulation governing these services. He soon received notice from the

Montana Public Service Commission (Commission), ordering him to cease debris removal activities, as he did not possess a Class D motor carrier certificate.

¶4 Noland ceased activities which required a Class D motor carrier certificate and applied—through PBN LLC—for a license with the Commission. He then received requests from existing Class D certificate holders, asking him to provide his financial information, including tax returns, revenues, and financial statements. Eventually, Noland determined going through the administrative proceedings was cost prohibitive and withdrew his application. Since then, Noland has been providing transportation services which do not require a Class D motor carrier certificate.

¶5 After withdrawing his application, Noland filed an action for declaratory judgment in the Eleventh District Court for the Flathead County under the Uniform Declaratory Judgments Act, seeking to declare two provisions of the Montana Motor Carrier laws unconstitutional. An existing Class D Motor Carrier Certificate holder, Evergreen Disposal, intervened in the case, seeking to uphold the existing certification procedure. In his suit, Noland challenged § 69-12-323(2)(a)(iii), (2)(b), and (3), MCA, which requires the Commission to consider the need for his services before approving his application for a Class D motor carrier certificate. Additionally, Noland challenged the ability of current Class D motor carriers to protest an application under § 69-12-321(1)(a)–(c), MCA. The Commission uses four elements, derived from § 69-12-323, MCA, to define public convenience and necessity: (1) an applicant presents a particular service is needed; (2) the existing motor carrier itself is not willing or able to meet the need; (3) the applicant will not bring harm to the incumbent motor carrier such that public interest is harmed; and

4

(4) the fitness of the applicant. Noland alleges these provisions, collectively called "public convenience and necessity" or "PCN" provisions, infringed on his rights protected under the Montana and United States Constitutions. Noland argues the PCN provisions violate: (1) the "right[] of pursuing life's basic necessities" under Article II, Section 3, of the Montana Constitution, (2) Due Process Clause of Article II, Section 17, of the Montana Constitution, (3) Equal Protection Clause under Article II Section 4, of the Montana Constitution, and (4) the federal Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Noland argues the PCN provisions are both unconstitutional as applied to him, and facially unconstitutional.[1]

¶6     After discovery, both Noland and the Defendants moved for summary judgment. The District Court granted summary judgment in favor of the Defendants and denied Noland's motion for summary judgment. The court held Noland lacked standing to assert his as-applied challenges. Noland was specifically seeking to vindicate a future injury which would occur if he was to reapply, and not his prior injury. As such, the court concluded Noland failed to demonstrate how the provisions would be unconstitutionally applied to him. The court further held Noland had standing to assert an as-applied challenge, but then ruled the provisions were not facially unconstitutional, since the Commission has previously approved other prior applications for a certificate. The District

---

[1] During the 2025 legislative session, a bill was proposed to amend § 69-12-301, MCA, to exclude Noland, and others similarly situated, from having to obtain a Class D certificate. HB 596, 69th Legislature, Reg. Sess. (Mont. 2025). The bill did not pass.

5

Court dismissed Noland's claims.  Noland now appeals the District Court's Order on Cross Motions for Summary Judgment.

## STANDARD OF REVIEW

¶7     This Court reviews de novo a district court's grant or denial of summary judgment, applying the criteria of M. R. Civ. P. 56(c).  *Stipe v. First Interstate Bank–Polson*, 2008 MT 239, ¶ 10, 344 Mont. 435, 188 P.3d 1063.  Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, demonstrate no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Stipe*, ¶ 10 (quoting M. R. Civ. P. 56(c)).  "A de novo review affords no deference to the district court's decision and we independently review the record, using the same criteria used by the district court to determine whether summary judgment is appropriate."  *Siebken v. Voderberg*, 2012 MT 291, ¶ 20, 367 Mont. 344, 291 P.3d 572.  We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the offered proof in favor of the non-moving party.  *Stipe*, ¶ 10.

## DISCUSSION

¶8     *Issue One: Whether Noland has standing to challenge the public convenience and necessity provisions of the Montana Motor Carrier law.*

¶9     Standing refers to a litigant's right to be heard in court.  We have recognized that like the federal courts, state courts are held to only determine "justiciable controversies" under the Montana Constitution, and do not issue advisory opinions.  *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567 (citation

omitted). Article VII, Section 4, of the Montana Constitution vests district courts with original jurisdiction in "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4(1). The "cases at law and in equity" language of Article VII embodies the same limitations for courts to hear "cases or controversies" as stated in Article III of the United States Constitution. *Plan Helena, Inc.*, ¶ 6. Thus, federal precedents of justiciability are persuasive authority for this Court. *Plan Helena, Inc.*, ¶ 6. Indeed, we acknowledge our standing jurisprudence is rooted in the case of controversy requirements of the United States Constitution. *Druffel v. Bd. of Adjustment*, 2007 MT 220, ¶ 14, 339 Mont. 57, 168 P.3d 640 (citing *Stewart v. Bd. of Cnty. Comm'rs of Big Horn Cnty.*, 175 Mont. 197, 200, 573 P.2d 184, 186 (1977)).

¶10 Standing is the question of whether a litigant has the right to seek judicial resolution of a dispute. Standing doctrine includes the concepts of actual standing and prudential standing. *Bullock v. Fox*, 2019 MT 50, ¶ 28, 395 Mont. 35, 435 P.3d 1187. Actual standing requires the plaintiff to "clearly allege a past, present, or threatened injury to a property or civil right," and the lawsuit must be capable of alleviating the injury. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 33, 360 Mont. 207, 255 P.3d 80 (citations omitted). Federal courts require three distinct elements to meet the United States constitutional case or controversy standing threshold: "injury in fact (a concrete harm that is actual or imminent, not conjectural or hypothetical), causation (a fairly traceable connection between the injury and the conduct complained of), and redressability (a likelihood that the requested relief will redress the alleged injury)." *Heffernan*, ¶ 32 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Steel Co. v. Citizens for a*

7

*Better Env.*, 523 U.S. 82, 103 (1988)). Though we often list our standing rule as two elements, we explained in *Larson v. State By and Through Stapleton*, standing requires a "direct causal connection between the alleged illegality and specific and definite harm personally suffered, or likely to be personally suffered, by the plaintiff." 2019 MT 28, ¶ 46, 394 Mont. 167, 434 P.3d 241.

¶11 Additionally, as a prudential matter, courts will not adjudicate generalized grievances more appropriately addressed in the representative branches, political questions inappropriate for judicial determination, and questions not yet ripe for review or which are moot. *See Schoof v. Nesbit*, 2014 MT 6, ¶¶ 20–21, 373 Mont. 226, 316 P.3d 831 (clarifying the prudential requirement that an alleged injury be distinct from injury to the public in general); *Larson*, ¶ 18.

¶12 Noland seeks a declaratory judgment finding the PCN provisions both facially unconstitutional and unconstitutional as-applied to him. A statute can be facially unconstitutional or unconstitutional as-applied to a plaintiff. *Broad Reach Power, LLC v. Mont. Dep't of Pub. Serv. Regul., Pub. Serv. Comm'n*, 2022 MT 227, ¶ 11, 410 Mont. 450, 520 P.3d 301. To be facially unconstitutional, it must be demonstrated there is no set of circumstances in which the statute could be constitutionally applied. Facial challenges are not dependent on the facts of a particular case, because the statute would be unconstitutional in all cases. *Broad Reach Power*, ¶ 11. A statute may also be unconstitutional as-applied in a particular case, and plaintiffs must show, under the facts of their case, the application of the statute violates their rights. *Broad Reach Power*, ¶ 11. The District Court relied on *Broad Reach Power* to conclude Noland did not have standing

to bring an as-applied challenge because there was "no record of how the Commission applied the statutes to him." However, the court concluded Noland had standing to bring a facial challenge because "facial challenges are not dependent on the facts of a particular case."

¶13 Noland does not challenge the prior submission of his application and the PCN provisions being enforced against him during that application. Instead, Noland argues he is still interested in conducting debris removal and applying for a Class D motor carrier certificate, and the provisions he challenges will be enforced against him in any future application. This is a pre-enforcement challenge to the statute, where Noland argues the law is unconstitutional before re-engaging in the offending behavior to avoid having it enforced against him. *See Gryczan v. State*, 283 Mont. 433, 942 P.3d 112 (1997); *Lee v. State*, 195 Mont. 1, 635 P.2d 1282 (1981).

¶14 Noland's pre-enforcement challenge raises an issue with his injury in fact. A plaintiff must allege the injury is concrete and particularized, and the injury is actual or imminent. *Heffernan*, ¶ 32. "At an irreducible minimum," the plaintiff must show he "has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action." *Mitchell v. Glacier Cnty.*, 2017 MT 258, ¶ 10, 389 Mont. 122, 406 P.3d 427.

¶15 Noland, and both Defendants, predominantly base their standing arguments on a pair of cases, *Gryczan*, and *Broad Reach Power*, where we addressed pre-enforcement challenges. In *Gryczan*, six plaintiffs alleged a state law prohibiting same-sex sexual conduct between consenting adults was unconstitutional. *Gryczan*, 283 Mont. at 438,

942 P.2d at 115. They sought a declaratory judgment declaring Montana's "deviate-sexual-conduct" statute unconstitutional as applied to them. *Gryczan*, 283 Mont. at 438, 942 P.2d at 115. This Court grappled with whether the plaintiffs had standing, as the criminal statute had not been enforced before. This Court noted: (1) the statute was only 24 years old and had been amended within the prior 5 years; (2) there was nothing in the statute to prevent a county attorney from enforcing the statute; and (3) the state had not disavowed future enforcement; thus, the Court determined the plaintiffs had a legally cognizable injury. *Gryczan*, 283 Mont. at 443–46, 942 P.2d at 118–20. We reiterated where the "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative[,] a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge the statute." *Gryczan*, 283 Mont. at 445, 942 P.2d at 119 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302, 99 S. Ct. 2301, 2310–11 (1979)).

¶16 More recently, we faced this issue in *Broad Reach Power*. There, two energy companies were seeking a declaratory judgment against the Public Service Commission, arguing the Commission's procedures in a contested case violated the companies' due process guarantees. *Broad Reach Power*, ¶ 3. The parties did not conduct discovery, instead moving straight to summary judgment. *Broad Reach Power*, ¶ 5. The district court held the energy companies lacked standing, failing to meet their burden to allege a due process violation. *Broad Reach Power*, ¶ 5. We affirmed the district court's holding on the standing requirements. *Broad Reach Power*, ¶ 13–14. In analyzing the energy

10

companies' injury, this Court noted a plaintiff may not bring an "as-applied challenge in a vacuum." *Broad Reach Power*, ¶ 13. The Court explained:

> [T]he PSC 'may' employ certain hearing actions pursuant to the statute[, this] does not establish how the PSC acted with regard to [the power companies], and to what prejudice. Thus, there are simply no facts within this record on which to adjudicate an as-applied constitutional challenge to the statute. Consequently, the declaratory request is speculative, and would require issuance of an advisory opinion.

*Broad Reach Power*, ¶ 13. Without a particular claim on how the PSC would violate the Due Process Clause, and support in the record to prove the violation, this Court denied standing. *Broad Reach Power*, ¶ 13, *see generally Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397 (9th Cir. 2019) (Plaintiffs challenging agency rules did not have standing when "it is not even clear what [the agency's] procedures will be, let alone whether [the agency] will employ them in a way that injures" the plaintiffs.).

¶17    To establish standing for an as-applied challenge, a plaintiff must articulate conduct and connect it to a constitutional right. Here, Noland seeks to vindicate: (1) the right to pursue life's basic necessities; (2) right to due process; (3) right to equal protection; and (4) the federal rights of due process and equal protection under the Fourteenth Amendment. He makes a nonfrivolous but bare legal argument connecting his intended activity—establishing a for-profit business to haul construction waste—to those constitutional rights. He relies on *Wadsworth v. State*, 275 Mont. 287, 911 P.2d 1165 (1996), to argue his business of hauling trash for profit is protected under the "life's basic necessities" clause. See also Mont. Const. art II, § 3 ("All persons are born free and have certain inalienable rights. They include . . . the right[] of pursuing life's basic necessities . . . ."). He then

11

argues the PCN provisions do not meet strict scrutiny because they are not narrowly tailored to a compelling state interest.

¶18 Oddly, Noland abandoned his previous Class D application and therefore did not exhaust his administrative remedies, a necessary condition before seeking judicial review of a Commission action. *Hilands Golf Club v. Ashmore*, 277 Mont. 324, 331, 922 P.2d 469, 472–73 (1996). He had the ideal opportunity to challenge the PCN statute as it was applied to him, but he chose not to. He instead retreated from the litigation and ceased his business operations which implicated the need for a Class D motor carrier license. Now he essentially asks this Court for an advisory opinion as to how the Commission *may have* implemented its procedures to violate his constitutional rights. He repeats the same process we rejected in *Broad Reach Power*, ¶ 13, an "as-applied challenge in a vacuum." Noland's conduct gives the court no basis to render an advisory opinion on his as-applied challenge.

¶19 Doing so has run him afoul of two of our prior case holdings. The first is *Sagorin v. Sunrise Heating and Cooling, LLC*, 2022 MT 58, 408 Mont. 119, 506 P.3d 1028. Sagorin was sole member of Yellowstone Lodging, LLC, who had a contract dispute with several heating ventilation and cooling contractors. *Sagorin*, ¶¶ 2–3. The dispute concerned work on property owned by the LLC, but Sagorin initiated a suit pro se with himself as the plaintiff, not the corporate entity. *Sagorin*, ¶ 3. When the defendants filed a motion to dismiss for lack Sagorin's standing to pursue claims on behalf of Yellowstone Lodging, LLC, Sagorin filed a document purporting to assign all of Yellowstone Lodging, LLC's interests to himself. *Sagorin*, ¶ 3.

¶20 The District Court granted the motion to dismiss for lack of standing, and we affirmed. *Sagorin*, ¶ 20. We held an LLC's assignment of claims even to its sole member "does not confer standing on the member to assert those claims." *Sagorin*, ¶ 17. We further held that Sagorin has not met the constitutional or prudential standing requirements because Yellowstone Lodging, LLC was allegedly injured, not Sagorin. *Sagorin*, ¶¶ 19–20. While "he may feel he has a personal stake in the outcome of the controversy" the claims belong to the LLC and Sagorin has not demonstrated he personally suffered an injury that would be alleviated by a court action. *Sagorin*, ¶ 20.

¶21 In this case, PBN, LLC, was the corporate entity that initiated the work which ran afoul of the purpose and need statute, and PBN was the entity that applied for a license with the Commission. PBN suffered the alleged injury of receiving discovery demands from competitors and faced the prospect of onerous administrative hearings. If there is a threatened injury subject to lawsuit, PBN was the entity who suffered it. PBN had the statutory right to judicial review of any negative agency proceeding, but chose not to utilize it, thus depriving the corporate entity of standing to challenge the Commission's ostensibly burdensome decision. *Druffel*, ¶ 16.

¶22 Just like in *Sagorin*, Noland is the sole member of the LLC and he may feel like he personally suffered the injury and has a personal stake in the outcome. But for standing purposes, he does not. The Commission's and competitor's conduct was directed toward PBN's application. Noland could receive a favorable ruling on an as-applied challenge, and that would not bar the Commission from requiring PBN's application to submit to the administrative hurdles.

13

¶23 Since the threatened injury to PBN is not before us, we now confront the threatened injury facing Noland, if in fact he were to apply personally to the Commission for a Class D certificate. Noland then runs into our second case problematic precedent. He asks us to grant the relief we rejected in *Broad Reach Power*, ¶ 13, an "as-applied challenge in a vacuum." Since there is no record of how the Commission's enforcement may be applied to him, Noland asks this Court for an advisory opinion as to how the PSC *may* implement its procedures in the future, and how this implementation *may* affect his constitutional rights. He asks this Court to entertain an as-applied challenge striking down the purpose and need statute without any "facts within this record on which to adjudicate an as-applied constitutional challenge to the statute." *Broad Reach Power*, ¶ 13.

¶24 Noland's end run around our administrative exhaustion precedent leaves him asking the Court to issue a ruling on the Commission's procedure without the Commission actually applying the procedure against him. On summary judgment, Noland must show there is no dispute as to the material facts and he is entitled to a ruling as a matter of law. Noland's factual allegations, while undisputed, were mere speculation as to how the commission will apply its procedure against him under a "hypothetical state of facts." *In Re Big Foot Dumpsters & Containers, LLC*, 2022 MT 67, ¶ 13, 408 Mont. 187, 507 P.3d 169. We would be required to imagine in theory how the Commission enforced the law against Noland, and to manufacture the arguments and impacts such proceedings may have on Noland's constitutional rights. It truly would be a "hypothetical state of facts" upon which to render an opinion. The District Court correctly determined it could not analyze a

14

fact-specific as-applied challenge when the suspect law had not actually been applied and could not therefore by analyzed.

¶25 *Issue Two: Whether the District Court correctly determined Noland's facial challenge failed because some applicants received a Class D motor carrier certificate.*

¶26 Noland additionally argues the PCN provisions are facially unconstitutional. The District Court held Noland has standing to bring a facial challenge because "facial challenges are not dependent on the facts of a particular case." However, facial challenges are still dependent upon the plaintiff alleging an injury in fact, causation, and redressability. *See, e.g., Advocates for Sch. Tr. Lands v. State*, 2022 MT 46, ¶ 19, 408 Mont. 39, 505 P.3d 825 (applying standing and ripeness principles to a facial challenge); *Park Cnty. Envtl. Council v. Montana Dep't of Envtl. Quality*, 2020 MT 303, ¶¶ 23–24, 402 Mont. 168, 77 P.3d 288, *superseded by statute on different grounds* (determining whether an organization has an injury-in-fact before addressing its facial challenge).

¶27 The distinction between a challenged provision's facial and as-applied constitutionality has no "automatic effect" on pleading, but rather "goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S. Ct. 876, 893 (2010). To obtain the remedy of striking an entire statute as facially unconstitutional, "challenger [must] demonstrate that 'no set of circumstances exists under which the challenged sections would be valid.'" *City of Missoula v. Mountain Water Co.*, 2018 MT 139, ¶ 21, 391 Mont. 422, 419 P.3d 685 (quoting *Montana Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 14, 382 Mont. 256, 368 P.3d 1131). If the challenger

15

carries that burden of proof beyond a reasonable doubt, then the offending statute "cannot be enforced under any circumstances." *Mountain Water Co.*, ¶ 21.

¶28 A plaintiff would still be barred from bringing a facial challenge to a statute if he failed to show he is aggrieved by that statute. In *Lee*, we held a driver had standing to bring a pre-enforcement facial challenge to an illegally-enacted speed limit, even though he had not yet been prosecuted for violating it. *Lee*, 195 Mont. at 6, 635 P.2d at 1284–85. The Legislature had delegated authority to the Attorney General to establish the new state-wide speed limit. *Lee*, 195 Mont. at 9, 635 P.2d at 1286. This unconstitutional delegation of powers made the speed limit illegal per se, regardless of the actual limits imposed or how it was enforced. *Lee*, 195 Mont. at 7, 635 P.2d at 1285. Lee successfully demonstrated he was directly affected by the law he was challenging. There was no dispute the new speed limit would be enforced statewide against all motorists—including Lee—upon its effective date. *Lee*, 195 Mont. at 7, 635 P.2d at 1285.

¶29 Unlike the as-applied challenge, where Noland failed to demonstrate a record of how the purpose and need statute would be applied against him, here Noland has plausibly alleged there is a credible threat of enforcement of the PCN provisions against him. In the past decade, 17 out of the 24 applications were protested, with the remaining receiving no protest or a protest being withdrawn. While the previous enforcement actions against PBN do not produce a cognizable injury for Noland personally, they do demonstrate there are competitors in the Flathead County area that are likely to challenge the emergence of any new competitor. The prior action also shows the Commission is likely to respond to

16

complaints or objections by competitors in an existing regulated service area. There is a clear history of past enforcement.

¶30 Second, granting private enforcement of the PCN provisions heightens, not lessens, the risk of enforcement. "The credibility of [a] threat [of enforcement] is bolstered by the fact that authority to file a complaint with the Commission is not limited to a prosecutor or an agency." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164, 134 S. Ct. 2334, 2345 (2014). By expanding the number of parties which may intervene in an application and seek sensitive company information from an applicant, the threat of enforcement is also expanded.

¶31 Lastly, even if no objection is filed, the Commission must still consider need in every application filed with the Commission. Sections 69-12-321, through -327, MCA; §§ 38.3.401 through 406, Admin. R. M. There is little doubt Noland, or any other similarly situated future applicant for a Class D certificate, will face Commission enforcement. Noland alleges this enforcement action, including the requirement to show a need for the business and respond to discovery requests, is what infringes upon his constitutional rights.

¶32 But Noland's alleged injury is not merely the procedural requirement to satisfy the purpose and need inquiry. Rather, Noland's alleged injury is an infringement upon his constitutional right to earn a living and enjoy equal protection of the law. The purpose and need inquiry is merely the alleged mechanism causing the injury to Noland's (or other applicant's) constitutional rights. As discussed above, Noland cannot advance an as-applied challenge to the statute because he did not navigate the application process and therefore cannot connect the allegedly injurious mechanism to his particular constitutional

17

harm.  But Noland can argue the statute is facially unconstitutional because the statute limits his or any applicant's ability to practice their profession by injecting monopolistic considerations into the application.

¶33    The District Court found Noland failed his facial challenge because some applicants were granted an application in spite of protests filed against them.  However, the District Court misunderstands the gravamen of Noland's injury argument.  It is not merely the ultimate denial of a permit which causes his injury, but also the procedure which requires he shows need to obtain a Class D certificate.  In *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, an association sued the City of Jacksonville, Florida, challenging the city's policy to set aside 10% of the city's contracts to minority-owned businesses.  508 U.S. 656, 659, 113 S. Ct. 2297, 2299 (1993).  The Court held the ultimate injury was "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."  *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666, 113 S. Ct. at 2303.  The action causing the equal protection injury was not solely the ultimate denial, but also the allegedly unconstitutional process tipping the scales in favor of certain contractors.  Similarly here, Noland's obstacle is not the ultimate rejection, but the procedure which he avers unconstitutionally limits his ability to obtain a Class D certificate and work in his chosen occupation.

¶34    Our review of the District Court comes after a ruling on summary judgment, when the court ruled the Defendants were entitled to judgment as a matter of law and Noland had demonstrated no genuine issues of material fact withstanding the order. M. R. Civ. P. 56(c).  When reviewing a motion for summary judgment de novo, we apply

18

the same criteria as the district court, view the evidence in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of the non-moving party. *Stipe*, ¶ 10. Under that standard of review and analyzing the evidence, we hold the District Court erred when it held Noland's facial constitutional challenge failed because some applicants received a Class D certificate. Such a ruling was focused upon the factual issue of the Commission outcomes but did not view Noland's argument as to the procedural constitutional burden in the light most favorable to the non-moving party. Where the application process itself is the mechanism of injury, regardless of ultimate outcome, the court must apply the relevant constitutional standards of review to the procedure as well as the results, and must draw all reasonable inferences in favor of the non-moving party on these fact issues.

¶35 We decline Noland's invitation to rule on the merits of the case. Surviving a summary judgment ruling on standing is not the same as a final determination on the merits of the case. The merits of each of the three facial constitutional challenges have not been developed or adjudicated at the District Court level. Noland may have asserted an injurious procedural mechanism to his constitutional rights, but he has not proven it yet. He has to do more than merely claim a procedural statute harms his rights; he needs to prove a chain of causation from the statutory procedural burden to an unconstitutional infringement of an applicant's rights to pursue life's basic necessities, enjoy equal protection under the law, and be afforded due process of the law. *See 350 Montana v. State*, 2023 MT 87, ¶ 19, 412 Mont. 273, 529 P.3d 847 (requiring proof of an economic injury from the challenged procedural requirements).

19

¶36    Having found Noland's facial challenge is not defeated simply because certain applicants were granted a Class D certificate, we remand the case for further analysis by the District Court on each constitutional provision.

**CONCLUSION**

¶37    We affirm the District Court order denying Noland's as-applied constitutional challenge for lack of standing.  We reverse the order denying Noland's facial challenge.  We hold he has standing to challenge the purpose and need statute.  We remand the case for further consideration of his facial challenge.


                                        /S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE


Justice Laurie McKinnon, specially concurring.

¶38    I specially concur in the Court's Opinion.  I write separately to clarify the proper standing analysis under Montana law.  My disagreement with portions of the Court's analysis is doctrinal rather than outcome-determinative.

¶39    I would affirm the District Court's conclusion that Noland lacks standing to bring his as-applied challenge, but I would do so on grounds that are consistent with Montana law and different from those in the District Court's Order and the Court's Opinion.  Additionally, I would affirm the District Court's conclusion that Noland has standing to bring his facial challenge, but I would reverse the District Court's decision that the facial

20

challenge ultimately fails because the court determined the challenged statutes are not unconstitutional in all cases. Noland argues that the notice, protest, and hearing procedures are unconstitutional; specifically, that the application process the Commission uses to decide who can get a license is unconstitutional. Those procedures apply in every case. Thus, that some applicants can obtain a certificate without incumbent garbage haulers filing a protest misstates Noland's claim. Noland does not challenge the requirement that he obtain a certificate—he challenges (1) the requirement that he demonstrate there is a "need" for a new garbage hauler and (2) the ability of incumbents to file protests. These provisions apply to every application. His challenge is based on: (1) Article II, Section 3, of the Montana Constitution, which provides that all people have the inalienable right to "pursu[e] life's basic necessities[;]" Article II, Section 17, of the Montana Constitution, which provides "[n]o person shall be deprived of life, liberty, or property without due process of law[;]" and Article II, Section 4, of the Montana Constitution, which provides that "[n]o person shall be denied the equal protection of the laws." He additionally raises claims under the federal Due Process or Equal Protection Clause. The parties do not argue that there are disputes of facts, and there is a full factual record that has been developed through ample discovery. The District Court likewise determined there was no factual dispute and that the case could be resolved on summary judgment. Although this Court can "affirm, reverse, or modify any judgment . . . and direct proper judgment to be entered[,]" § 3-2-204(1), MCA, the more prudent course would be for the trial court to first provide its reasoning and analysis addressing the merits of Noland's claims. Accordingly, I would

21

remand for the District Court to provide a decision on the merits of each claim based on the record before it.

**Standing to raise an as-applied challenge.**

¶40 While it is true that standing must exist in every case regardless of the type of challenge brought,[1] our precedent establishes that the standing considerations for an as-applied challenge and a facial challenge differ. *See Broad Reach Power, LLC v. Mont. Dep't of Pub. Serv. Regul.*, 2022 MT 227, ¶ 11, 410 Mont. 450, 520 P.3d 301 (explaining that as-applied challenges rely on specific facts, but "facial challenges are not dependent on the facts of a particular case"). Indeed, the District Court held that Noland does not have standing to bring an as-applied challenge, but Noland has standing to bring a facial challenge. I would bifurcate the issues and apply our Montana standing precedent to each challenge distinctly. *See Held v. State*, 2024 MT 312, ¶ 54 n. 9, 419 Mont. 403, 560 P.3d 1235 (suggesting that standing must exist in all cases, but the allegations required to confer standing in the as-applied context and facial context differ).

¶41 While Article VII, Section 4(1), of the Montana Constitution "embodies the same limitations as are imposed on federal courts by the 'case or controversy' language of Article III" of the United States Constitution, Montana's standing test differs from those that apply in the federal courts. *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567; *Heffernan v. Missoula City Council*,

---

[1] At the standing stage, the Court does not assess whether the challenged provisions are constitutional, but only whether the plaintiff has alleged a sufficiently concrete injury to permit judicial resolution of the question.

22

2011 MT 91, ¶¶ 32-33, 360 Mont. 207, 255 P.3d 80. Justiciability is broad and has more specific doctrines, including, for example, standing, ripeness, and mootness. *Plan Helena, Inc.*, ¶ 8. In *Heffernan*, we explained that in Montana "there are in fact two strands to standing: the case-or-controversy requirement imposed by the [Montana] Constitution, and judicially self-imposed prudential limitations." *Heffernan*, ¶ 31. We explained that in *federal courts*, standing has three elements—injury in fact, causation, and redressability. *Heffernan*, ¶ 32. However, we then noted that "[s]imilarly, *in Montana*, to meet the constitutional case-or-controversy requirement, the plaintiff must clearly allege a past, present, or threatened injury to a property or civil right." *Heffernan*, ¶ 33 (emphasis added). Montana's standing inquiry focuses on whether the plaintiff has clearly alleged a past, present, or threatened injury that is sufficiently concrete to avoid advisory adjudication. *Gryczan v. State*, 283 Mont. 433, 443-45, 942 P.2d 112, 118-19 (1997).

¶42 The District Court properly identified Montana's case-or-controversy requirement. The District Court, relying on *Broad Reach Power, LLC*, concluded that Noland lacks standing to bring his as-applied challenge because no record exists of how the Commission applied the statutes to Noland, individually. Although *Broad Reach Power, LLC* involved an as-applied challenge to a statute, I contend the District Court conflated standing and merits by relying solely on *Broad Reach Power, LLC* to conclude that Noland lacks standing to bring his as-applied challenge.

¶43 In *Broad Reach Power, LLC*, we considered whether two utility companies had standing to bring an as-applied challenge to the Public Service Commission's ("PSC") case procedures. *Broad Reach Power, LLC*, ¶ 3. The companies believed that the challenged

23

statute was unconstitutional because it purportedly allowed the PSC to take procedural actions that violated their due process rights. *Broad Reach Power, LLC*, ¶ 11. We determined that the companies had "essentially brought their as-applied challenge in a vacuum" and concluded that the companies lacked standing to bring their as-applied challenge. *Broad Reach Power, LLC*, ¶ 13.

¶44 The District Court found the circumstances in *Broad Reach Power, LLC* analogous to the situation here and reasoned that since Noland himself did not apply for a Class D certificate, no facts exist to support a determination that the challenged provisions are unconstitutional as applied to Noland. However, Noland's as-applied challenge is different from the one brought by the companies. The companies in *Broad Reach Power, LLC* argued that "the PSC could apply the statute in a manner that would 'guarantee impartiality' and not violate Appellants' due process rights, and thus they contend[ed] the statute is unconstitutional in the way the PSC is currently applying it." *Broad Reach Power, LLC*, ¶ 12. Two points are noteworthy about the companies' argument. First, they conceded that the statute was capable of being constitutionally applied and acknowledged that it was not guaranteed that the statute would be applied to them unconstitutionally: Noland has not done so. Second, the companies were not specifically bringing a pre-enforcement challenge: they argued that the statute was unconstitutional *as it was currently being applied*. This latter point was what made the companies' lack of evidence a standing issue. While the companies argued that the challenged statute was presently being unconstitutionally applied to them, the companies could point to no evidence in the record to support their allegations. *Broad Reach Power, LLC*, ¶ 13 (explaining that the

24

companies failed to "establish how the PSC acted with regard" to them "and to what prejudice"). Particularly, the parties had not engaged in discovery, the companies had not developed a factual record of how the PSC applied the challenged statute to them, and there was no factual demonstration "of how such an application of the statute violated their due process right to a fair and impartial hearing." *Broad Reach Power, LLC*, ¶¶ 3, 13.

¶45 Contrastingly, Noland's as-applied challenge is forward-looking: he is seeking prospective relief regarding allegedly unconstitutional statutes that are not currently being applied to him. Noland contends that *if he applies* for a Class D certificate, he *will be* subject to the need requirement and protest procedures and at that point, the provisions would be unconstitutionally applied to him. He believes he should not have to subject himself to an allegedly unconstitutional application process in order to have standing to bring an as-applied challenge. Since *Broad Reach Power, LLC* did not clearly analyze a pre-enforcement challenge, it does not offer much guidance in deciding whether Noland has standing. The question here is not whether we have a sufficient record to determine if Noland has suffered harm. The key inquiry is whether Noland has clearly alleged a threatened injury sufficient to confer him standing to bring an as-applied challenge: can Noland bring his as-applied challenge before he has applied for the certificate?[2] *Gryczan* and its progeny best guide this analysis.

---

[2] PBN LLC, the entity formed by Noland for his trash hauling services, applied for a Class D certificate. However, the application was withdrawn because Noland found the process too cost prohibitive. PBN LLC is not a party to this suit. Instead, Noland's claims are all brought in his individual capacity, and he is seeking relief for threatened injury to himself in a future application.

25

¶46   In *Gryczan*, we considered whether the plaintiffs had standing to bring an as-applied challenge to § 45-5-505, MCA (1993), the statute that criminalized consensual sex between adults of the same gender, when the statute had not specifically been enforced against them. *Gryczan*, 283 Mont. at 438, 440, 942 P.2d at 115, 117.  The plaintiffs had engaged and intended in the future to engage in conduct that violated the statute.  *Gryczan*, 283 Mont. at 439, 942 P.2d at 115-16.  The State argued that the plaintiffs lacked standing to bring an as-applied challenge because they were not under "a credible threat of prosecution under the statute" since no one had been prosecuted under the statute since its enactment. *Gryczan*, 283 Mont. at 441, 942 P.2d at 117.  The plaintiffs responded that the lack of enforcement of the statute should not bar them from bringing an as-applied challenge because the mere existence of the statute constituted injury, and they were at constant risk of prosecution.  *Gryczan*, 283 Mont. at 441, 942 P.2d at 117.

¶47   The Court explained Montana's case-or-controversy requirement: the plaintiff "must clearly allege past, present, or threatened injury to a property or civil right" in order to have standing.  *Gryczan*, 283 Mont. at 442, 942 P.2d at 118.  The Court provided that "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative[,] a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute."  *Gryczan*, 283 Mont. at 445, 942 P.2d at 119 (quotations omitted) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302, 99 S. Ct. 2301, 2310-11 (1979)).  We concluded that the plaintiffs met the case-or-controversy requirement because the statute was directly aimed at them as a

targeted group of citizens and created a "fear of prosecution sufficient to confer standing." *Gryczan*, 283 Mont. at 445, 942 P.2d at 119.

¶48 The State argues that *Gryczan* is inapplicable because it involved a criminal statute. This is also incorrect. Although *Gryczan* involved a criminal statute, the case-or-controversy requirement does not rely on a criminal/civil statute distinction. Our case-or-controversy requirement has been consistently cited and applied for decades, in both cases that challenged criminal statutes and cases that challenged civil statutes. *See, e.g.*, *Held*, ¶ 32, *350 Mont. v. State*, 2023 MT 87, ¶ 15, 412 Mont. 273, 529 P.3d 847; *Weems v. State*, 2019 MT 98, ¶¶ 9, 11, 395 Mont. 350, 440 P.3d 4; *Reichert v. State*, 2012 MT 111, ¶ 55, 365 Mont. 92, 278 P.3d 455; *Heffernan*, ¶ 33. Recently, we cited the same case-or-controversy rule. *Gottlob v. Desrosier*, 2025 MT 56, ¶ 14, 421 Mont. 176, 565 P.3d 1196. We explained:

> Constitutional standing requires that the plaintiff show she "has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action." This injury must be concrete—that is, it must be actual or imminent, not conjectural or hypothetical.

*Gottlob*, ¶ 14 (citations and quotations omitted). Our case-or-controversy requirement is explicit. While federal principles of what constitutes an injury have and may be persuasive authority in aiding us in determining standing in a particular case, we need not incorporate the specific federal framework to determine if a plaintiff's injury is sufficiently concrete.

¶49 Noland is bringing a pre-enforcement challenge to the need requirement and protest procedure. Therefore, to have standing, he must have clearly alleged a threatened injury to his rights—one that is sufficiently imminent and not hypothetical. Noland argues that

27

his situation is analogous—and even more straightforward—than the plaintiffs' situation in *Gryczan*. He believes that the mere existence of the provisions burdens his ability to engage in his desired conduct just as the statute in *Gryczan* burdened the plaintiffs' ability to engage in their desired conduct. Unlike the plaintiffs in *Gryczan*, Noland is not currently within the regulated class to which the need requirement and protest procedures apply. His alleged injury depends on future contingencies, and therefore lacks the immediacy required to confer standing for an as-applied challenge. In *Gryczan*, the plaintiffs were under the constant threat of arrest and prosecution: they were presently subject to the statute they challenged. *Gryczan*, 297 Mont. at 445, 942 P.2d at 119. Yet, here, Noland is not currently operating in violation of the Class D certificate requirement nor has he applied in his individual capacity for a certificate. Noland's threatened injury is more imaginary and speculative than the plaintiffs' injury in *Gryczan* because he is not presently at risk of having the need requirement and protest procedure specifically applied to him. His mere desire to engage in prohibited conduct (operating without a certificate) is not sufficient to confer him standing.

¶50    In *Gryczan*, it was important to the analysis that the plaintiffs were a part of the specific group of citizens who were at present risk of prosecution. *Gryczan*, 283 Mont. at 445, 942 P.2d at 119. Only applicants are subject to the need requirement and protest procedures. Noland is not currently an applicant and therefore does not presently fall under the specific group at risk of being subject to allegedly unconstitutional statutes. Additionally, this is not a situation where denying Noland "standing would effectively immunize the statute from constitutional review," as it was in *Gryczan*. *Gryczan*,

28

283 Mont. at 446, 942 P.2d at 120. Once Noland applies in his individual capacity, the threatened injury becomes imminent and concrete and would likely confer him standing because he would fall under the specific group of citizens subject to the statutes. However, on the present record, I would conclude that Noland's threatened injury is too speculative and that he lacks standing to bring an as-applied challenge. Because Montana standing doctrine resolves this issue, there is no need to adopt or reject federal multi-factor pre-enforcement frameworks.

¶51 Since I would conclude that Noland does not meet the case-or-controversy requirement, I would not analyze prudential standing in the context of his as-applied challenge. *Heffernan*, ¶¶ 33-34.

**Standing to raise a facial challenge.**

¶52 To be clear, the District Court explicitly reasoned that "Noland has standing to challenge the statutes on their face because facial challenges are not dependent on the facts of a particular case." The District Court concluded that "Noland lacks standing to challenge the statutes as applied to him but has standing to challenge the statutes on their face." I agree with the District Court's analysis of this point.

¶53 "A statute can be either facially unconstitutional or unconstitutional as applied." *Broad Reach Power, LLC*, ¶ 11 (citing *City of Missoula v. Mountain Water Co.*, 2018 MT 139, ¶¶ 21-25, 391 Mont. 422, 419 P.3d 685). While an as-applied challenge requires the plaintiff to show that under the facts of his case, the application of the statute would violate his rights, to succeed on a facial challenge, "it must be demonstrated there is no set of circumstances in which the statute could be constitutionally applied[.]" *Broad Reach*

29

*Power, LLC*, ¶ 11. "[A]s such, facial challenges are not dependent on the facts of a particular case, because the statute would be unconstitutional in all cases." *Broad Reach Power, LLC*, ¶ 11. By bringing a facial challenge, Noland is arguing that there are constitutional infirmities inherent within the need requirement and protest procedure notwithstanding whether the statutes are unconstitutional as applied to him.

¶54 When a party asks us to invalidate a statute on its face, the unconstitutionality "flows from the content of the statute itself, not the particular circumstances of the litigants." *Park Cnty. Env't Council v. Mont. Dep't of Env'l Quality*, 2020 MT 303, ¶ 86, 402 Mont. 168, 477 P.3d 288. Therefore, the Court's reasoning that Noland does not have standing to bring a facial challenge because Noland has failed to provide evidence to show he has suffered or is likely to suffer an injury in fact misses the central characteristic of a facial challenge, which is that a facial challenge is necessarily detached from a litigant's individual circumstances.

¶55 In *Held*, we considered whether the plaintiffs had standing to bring a facial challenge to the MEPA limitation. *Held*, ¶¶ 31-55. There, the Dissent took issue with the fact that the plaintiffs had not brought their facial challenge to the statute in the context of a specific permit. *Held*, ¶ 54. We clarified that while it would be necessary for the plaintiffs to bring an as-applied challenge in the context of a specific permit, the plaintiffs were not required to do so to raise a facial challenge. *Held*, ¶ 54. We distinguished the plaintiffs' facial challenge from the as-applied challenge brought in *Broad Reach Power, LLC*, and reiterated that facial challenges are not dependent on the facts of a particular case. *Held*, ¶ 54 (citing *Broad Reach Power, LLC*, ¶ 11).

30

¶56    Most relevant to the situation presented here, we explained the following:

> [I]n agreement with the Dissent—plaintiffs must still have standing to challenge a statute as facially unconstitutional. Plaintiffs here demonstrated standing not by alleging facts that the MEPA Limitation was unconstitutional because of how the State applied it to a particular permit but because they sufficiently alleged that the MEPA Limitation unconstitutionally infringes on their right to a clean and healthful environment. This is distinct from a common, abstract interest in the constitutionality of a law.

*Held*, ¶ 54 n. 9. Consequently, Noland's ability to bring a facial challenge is tied to whether his allegations sufficiently allege the violation of his constitutional rights in a way that is not a common, abstract interest in the constitutionality of the need requirement and protest procedure. This inquiry should not be confused with the ultimate merits of Noland's facial challenge. With facial challenges, the standing concern is whether a court can meaningfully provide redress by declaring the challenged statutes unconstitutional. *Held*, ¶ 54. Noland alleges that the need requirement and protest procedure violate the following constitutional rights: his inalienable right to pursue life's basic necessities under the Montana Constitution and his due process and equal protection rights under both the Montana Constitution and the 14th Amendment to the U.S. Constitution. Additionally, his interest in the statutes is "distinct from a common, abstract interest" because he would operate his garbage hauling business and apply for a Class D certificate if the need requirement and protest procedure were not enforced. From a facial challenge standpoint, if we declare the challenged statutes unconstitutional in all cases, we would be alleviating Noland's alleged constitutional injury because the statutes could no longer be enforced. *See Held*, ¶ 52 (finding standing for the plaintiffs' facial challenge because "[d]eclaring

31

that law unconstitutional and enjoining the State from acting in accordance with it will effectively alleviate . . . [the] constitutional injury" alleged by the plaintiffs (emphasis omitted)). For the same reason the plaintiffs in *Held* did not need to bring their facial challenge in the context of a specific permit, Noland need not bring his facial challenge in the context of a specific application.

¶57 The standing analysis of Noland's facial challenge is not resolved by acknowledging that a court could provide redress for the alleged constitutional injuries. A court must also analyze the "judicially self-imposed prudential limitations," which is the second prong of the standing requirement. *Heffernan*, ¶ 31. "Case-or-controversy standing limits the courts to deciding actual, redressable controversy, while prudential standing confines the courts to a role consistent with the separation of powers." *Bullock v. Fox*, 2019 MT 50, ¶ 28, 395 Mont. 35, 435 P.3d 1187. "Prudential standing embodies the notion that courts generally should not adjudicate matters more appropriately in the domain of the legislative or executive branches or the reserved political power of the people." *Bullock*, ¶ 43 (quotations omitted). Potentially relevant here is the prudential standing consideration that the alleged injury must be distinguishable from the injury to the public in general. *Bullock*, ¶ 45; *Heffernan*, ¶ 33. Noland meets this consideration because he represents a small subset of Montanans: those who desire to operate a trash hauling business and who will be subject to, upon application, the need requirement and protest procedure. Another prudential standing consideration is the importance of the question to the public. *Barrett v. State*, 2024 MT 86, ¶ 38, 416 Mont. 226, 547 P.3d 630. This factor is easily met because the availability of trash hauling services is important to the public, and, if certain statutes

unconstitutionally regulate who can offer those services, prudential considerations favor court interpretation. Finally, Noland's facial challenge is an issue of statutory and constitutional interpretation—an acceptable exercise of judicial authority.

¶58 The constitutional component asks if there is sufficient injury. *Advocates for Sch. Trust Lands v. State*, 2022 MT 46, ¶ 20, 408 Mont. 39, 505 P.3d 825. The prudential component "weighs 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Advocates for Sch. Trust Lands*, ¶ 20 (quoting *Reichert*, ¶ 56). Here, Noland's facial argument is that the need requirement and protest procedure are unconstitutional in every case because they impose a barrier on every single Class D certificate applicant. In *Advocates for Sch. Trust Lands*, the Court found that the plaintiffs' facial challenge met the prudential component because they asked the court to find "constitutional infirmity" within the bill's operation in every case. *Advocates for Sch. Trust Lands*, ¶ 29. I believe that this argument is similar to Noland's argument. Therefore, I would conclude that Noland meets the prudential component of standing.

**Merits of Noland's Facial Challenge.**

¶59 Since I would affirm the District Court's conclusion that Noland has standing to bring his facial challenge, I thus turn to the merits of his challenge. The District Court reasoned that since there have been successful applicants who have been granted a Class D certificate after being subject to the protest procedure, the challenged statutes are not unconstitutional in all cases, and Noland's facial challenge must fail. This analysis misconstrues the nature of Noland's constitutional claims

¶60    To succeed on a facial challenge is a difficult task. *City of Missoula*, ¶ 21. "Statutes are presumed constitutional, and . . . [a] statute found to be facially unconstitutional cannot be enforced under any circumstances." *City of Missoula*, ¶ 21. Noland argues that the process itself is facially unconstitutional because no set of circumstances exists where allowing the protests and requiring a showing of public need is constitutional. In other words, the mere existence of the process is an unconstitutional obstacle that exists in all circumstances. The evidence of record establishes that of the 24 applications for a Class D certificate, 12 were withdrawn, two were denied, and ten were granted. The ones that were denied or withdrawn occurred after a protest was submitted by an existing company. Of the ten that were granted, three were granted over protest, three were granted with no protest at all, and four were granted after a protester withdrew its protest.

¶61    Turning first to Noland's equal protection violations, he advances two groups of similarly situated persons: (1) motor carriers who operate motor vehicles upon public highways for the transportation of passengers, household goods, or garbage for hire on a commercial basis—with only Class D garbage haulers being subjected to anticompetitive protests; and (2) all Class D carriers who want to haul garbage—with only new Class D applicants subjected to anticompetitive protests from incumbent Class D carriers. I would suggest the possibility of an additional third class, slightly varied from scenario (2): all Class D applicants for a certificate—with a distinction between those applicants that must go through the protest process and those where no protest has been filed. Each scenario presents a facial challenge to the notice, protest, and hearing procedures established by § 69-12-323, MCA, which will apply in every instance an application is made.

¶62 Noland advances a facial challenge to the notice, protest, and hearing procedures of § 69-12-323, MCA, pursuant to the due process provisions of the federal and Montana Constitutions. He maintains that an economic regulation that burdens a plaintiff's right to earn a living violates these provisions if it is not "reasonably related to a permissible legislative objective." *Mont. Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 21, 382 Mont. 256, 368 P.3d 1131. Noland does not challenge the regulation of garbage hauling as it relates to public health and safety, only the narrower provisions requiring that need be demonstrated and the allowance of anticompetition protests by incumbents. Noland argues the provisions challenged here violate his right to pursue employment by presenting a substantial barrier to operating a garbage hauling business. Noland advances a facial challenge to the notice, protest, and hearing procedures of § 69-12-323, MCA, which is distinct from the actual issuance of a certificate. This statute, which sets out the need and protest process, applies to every applicant.

¶63 Lastly, Noland brings a challenge pursuant to Montana's constitutional provision that provides all people have an inalienable right to "pursu[e] life's basic necessities." Mont. Const. art II, § 3. Relying on *Wadsworth v. State*, 275 Mont. 287, 298-99, 911 P.2d 1165, 1171-72 (1996), Noland contends that employment is the primary way that a person exercises and enjoys this fundamental constitutional right. Noland thus advances a facial challenge to the notice, protest, and hearing procedures of § 69-12-323, MCA, which is distinct from the actual issuance of a certificate and applies every time an application is made.

¶64   I would affirm the District Court's conclusion that Noland lacks standing to bring an as-applied challenge but has standing to bring a facial challenge. Because I conclude the District Court improperly focused on the *outcome* of the application process rather than the notice, protest, and hearing procedures of § 69-12-323, MCA, which apply to every application for a certificate, I would remand for a decision by the District Court on the merits of Noland's alleged facial constitutional violations. I do not opine further on the merits other than to more clearly state the nature of Noland's claims. I further do not opine on the level of scrutiny that should be applied to each challenge.

¶65   Pursuant to this analysis, I would affirm in part, and reverse and remand in part, to the District Court.


                                        /S/ LAURIE McKINNON


Justices Ingrid Gustafson and Katherine Bidegaray join in the specially concurring Opinion of Justice Laurie McKinnon.


                                        /S/ INGRID GUSTAFSON
                                        /S/ KATHERINE M. BIDEGARAY